## DIXON et al. v. UNITED STATES.
### No. 11749.

Circuit Court of Appeals, Eighth Circuit.
Jan. 16, 1941.

Frank Hickman, of Tulsa, Okl., for appellants.

Clinton R. Barry, U. S. Atty., of Fort Smith, Ark. (Duke Frederick, John E. Harris, and Thomas C. Pitts, Asst. U. S. Attys., all of Fort Smith, Ark., on the brief), for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

The appellants were convicted and sentenced upon 29 counts of an indictment containing 48 counts for violation of 26 U.S. C.A. Int.Rev.Code, § 2857,[1] for that, being officers, agents and employees of Southwestern Distilled Products, Inc., a wholesale liquor dealer in Sulphur Springs, Arkansas, they feloniously made false entries in the records required by law to be kept by said corporation of the distilled products disposed of by it, in that they did sell to named

---

[1] 26 U.S.C.A.Int.Rev.Code, § 2857 "Requirements. Every rectifier and every wholesale liquor dealer who sells, or offers for sale, distilled spirits in quantities of five wine-gallons or more to the same person at the same time shall keep daily, at his place of business covered by his special tax stamp, a record of distilled spirits received and disposed of by him, and shall render under oath correct transcripts and summaries of such records: *Provided,* That the Commissioner may in his discretion require such record to be kept at the place where the spirits are actually received and sent out. The records shall be kept and the transcripts shall be rendered in such form, and under such rules and regulations as the Commissioner, with the approval of the Secretary, may prescribe.

The records required to be kept under the provisions of this section and regulations issued pursuant thereto, shall be preserved for a period of four years, and during such period shall be available during business hours for inspection and the taking of abstracts therefrom by the Commissioner or any internal revenue officer.

Every rectifier and wholesale liquor dealer who refuses or neglects to keep such records in the form prescribed by the Commissioner, with the approval of the Secretary, or to make entries therein, or cancels, alters, or obliterates any entry therein (except for the purpose of correcting errors) or destroys any part of such records, or any entry therein, or makes any false entry therein, or hinders or obstructs any internal revenue officer from inspecting such records or taking any abstracts therefrom, or neglects or refuses to preserve or produce such records as required by this chapter or by regulations issued pursuant thereto, shall pay a penalty of $100 and, on conviction, shall be fined not less than $100 nor more than $5,000, and be imprisoned not less than three months nor more than three years.

Every rectifier and wholesale liquor dealer who refuses or neglects to render transcripts or summaries in the form required by the Commissioner, with the approval of the Secretary, shall, upon conviction, be fined not more than $100 for each such neglect or refusal."

persons certain quantities of whiskies, gin and grain alcohol, a record of such sales thereof having been made by appellants on commercial invoices on which invoices entries were made showing sold to a certain person at a certain address, thereby purporting to show and state that said spirits had been sold to such person who resided at and had a place of business or resided in such city or at said address, which entries were false, in that the liquor had not been sold to such person or that such person did not have a place of residence or reside in such city or at such address, but resided at an address in a city in the state of Oklahoma or the state of Kansas, naming it, all of which was known to the appellants at the time of making said false entries in said invoices.

At the close of all the evidence the defendants demurred to the evidence and moved for directed verdict, and on this appeal they contend that no offense was proved in that the false entries charged and shown in evidence against them were entries on commercial invoices and were not entries on forms prescribed by the Commissioner of Internal Revenue and approved by the Secretary of the Treasury within the purview of 26 U.S.C.A. Int.Rev.Code, § 2857, alleged to have been violated.

The bill of exceptions agreed upon by the parties, and duly settled and certified by the court, discloses the following uncontroverted facts:

During the year 1938 the defendants, Cole and Dixon, operated a wholesale liquor store in the town of Sulphur Springs, Benton County, Arkansas, under the name of Sulphur Springs Wholesale Liquor Store, and the defendants, Myatt and Hess, were employees of that business, Myatt being a bookkeeper and Hess being in charge of loading merchandise and wrapping the same as well as packing the same in the private automobiles of buyers. The town of Sulphur Springs is located just east of the Oklahoma line and close to the state line of Kansas, both of which states during 1938 prohibited the introduction therein or sale of intoxicating liquor.

On or about the 1st of March, 1939, there came into effect in the state of Oklahoma a law prohibiting the introduction of intoxicating liquor therein without a permit being first procured for that purpose, 37 Okl.St. Ann. 341 et seq., and Oklahoma became a state in which the Liquor Enforcement Act of 1936, 27 U.S.C.A. 221 et seq., was operative.

During 1938 the Southwestern Distilled Products, Inc., operated a rectifying plant and wholesale liquor store in the town of West Memphis in the state of Arkansas, but with that concern these defendants had no connection until in the month of March, 1939, when a contract was entered into between the defendant Cole and the Southwestern Distilled Products, Inc., whereby the Southwestern Distilled Products, Inc., would set up a wholesale liquor store in the town of Sulphur Springs under the exclusive management of Cole. At that time it was a violation of the Act of Congress referred to, to ship liquor into the state of Oklahoma, but was not a violation of the Act of Congress to ship liquor into the state of Kansas, that state not having yet enacted conformity legislation to make the Act of Congress operative therein.

A Wholesale Liquor Dealer's Stamp was procured by the corporation for its place of business in Sulphur Springs and they set up for business and all of the defendants became either agents, servants or employees of the corporation.

In the latter part of the year 1938, and while the Sulphur Springs Wholesale Liquor Store was still operating, the defendant Cole procured from the Internal Revenue Office in Oklahoma City a list of the names and addresses of persons in the state of Oklahoma to whom had been issued Retail Liquor Dealer's Stamps. When the Southwestern Distilled Products, Inc., started operation in Sulphur Springs, the defendants, by long distance telephone, contacted a great many of the persons in Oklahoma to whom Retail Liquor Dealer's Stamps had been issued, informing them that they were set up in business again at Sulphur Springs and were in position to sell intoxicating liquor at wholesale.

During the time liquor was sold by the Sulphur Springs Wholesale Liquor Store and during the time sales were made by Southwestern Distilled Products, Inc., at Sulphur Springs, the same method of delivery was carried out, that is, the prospective purchasers would drive to the place of business in private automobiles, give his order to an employee who would proceed to pack the merchandise in the private vehicle, not in the original cases, but in packages wrapped with paper and tied with string, identified by initials of the brand,

which packages were commonly called "lugs".

After the Oklahoma Conformity Act became effective and at the time the wholesale liquor store was set up in the name of Southwestern Distilled Products, Inc., the purchasers were informed that no sales could be made to them unless and until they procured Retail Liquor Dealer's Stamps[2] showing an address in a state where the Liquor Enforcement Act of 1936 was not in effect. So that these liquor dealers to whom Retail Liquor Dealer's Stamps had been previously issued for addresses in the state of Oklahoma, procured Retail Liquor Dealer's Stamps in the state of Kansas, and likewise changed the registration of their privately-owned automobiles from Oklahoma to the state of Kansas, and affixed thereon Kansas state license tags. These persons coming to Sulphur Springs to purchase liquor would direct the defendants to record the transaction of sale on their records in accordance with the address shown on their Retail Liquor Dealer's Stamp so that between April, 1939, and July 1, 1939, practically every transaction for the sale of liquor was noted on the records of the Wholesale Liquor Store as a sale to a man residing in the state of Kansas, giving his street address and the city therein shown by his Retail Liquor Dealer's Stamp.

On July 1, 1939, an act of the legislature of Kansas similar to the Oklahoma law went into effect, Laws 1939, c. 179, and Kansas became a state in which the Liquor Enforcement Act of 1936 was operative, and the practice of recording the sales in the names of these persons at addresses in the state of Kansas was discontinued and these persons were required, by the defendants, to procure Retail Liquor Dealer's Stamps in other states where by law the importation or sale of intoxicating liquor was not prohibited, or where the Liquor Enforcement Act of 1936 was not operative, and these same persons who had been purchasing liquor theretofore proceeded to procure Retail Liquor Dealer's Stamps, showing their addresses to be in various cities in the states of Texas and Mississippi, and thereafter the transactions were recorded on the records of the Southwestern Distilled Products, Inc., as sales to persons in the states of Texas and Mississippi.

The defendants knew these purchasers of liquor to be persons who were engaged in the illegal introduction into, and the sale of intoxicating liquors into, the states of Oklahoma and Kansas, during all of the time involved, and that they continued to be so engaged in those states during all of the time involved in the indictment.

During the time the Southwestern Distilled Products, Inc., operated a wholesale liquor store in Sulphur Springs various investigators connected with the Alcohol Tax Unit visited the place, talked to the defendants and inspected the records that they kept, and on several of these occasions when officers were present and purchasers of liquor were waiting for their automobiles to be loaded up, the purchasers directed the defendants to proceed to unload their vehicles and they would not make the purchase in the presence of the officers, but would return on the following day and procure their orders and drive off with the same. On many occasions the defendants or some of them would discuss with the purchasers of liquor the different roads or highways leading to Oklahoma and Kansas that would be unsafe to drive over at the particular time involved and would suggest the use of other roads or highways to avoid detection by federal officers or officers of the state of Oklahoma or the state of Kansas.

On not all occasions would the defendants require the production by a purchaser of his Retail Liquor Dealer's Stamp, but would take the word of the purchaser that he had a Retail Liquor Dealer's Stamp issued to him for the address that would be shown on the commercial invoice evidencing the transaction. In other instances it appeared that no Retail Liquor Dealer's Stamp was issued at all to the purchaser, but in such instances the purchaser would advise the employee with whom he had his transaction that he had a Retail Liquor Dealer's Stamp. On other occasions the purchaser would purchase liquor and direct the recording of the transaction on the invoice in the name of some other person for whom a Retail Liquor Dealer's Stamp had been issued.

The Southwestern Distilled Products, Inc., was required to keep a record of all transactions involving the sale of liquor from its store for which its stamp had been issued. These records were required to be kept in accordance with the rules and regulations prescribed by the Commissioner of Internal Revenue and approved by the

---

2 See 26 U.S.C.A.Int.Rev.Code, § 3250.

Secretary of the Treasury and kept on forms prescribed by the Commissioner of Internal Revenue and approved by the Secretary of the Treasury. The Commissioner, with the approval of the Secretary of the Treasury, had prescribed rules and regulations governing the conduct of the business of a wholesale liquor dealer, which rules and regulations are set forth and form a part of Form No. 338, which report is required to be made monthly by each wholesale liquor dealer to the District Supervisor of the Alcohol Tax Unit, showing a recapitulation of all merchandise received and disposed of during the month. Form No. 338, on which appears the rules and regulations pertinent in this case, is appended.[3] The rules and regulations re-

---

[3] Record 338

Treasury Department
Internal Revenue Service
(Rev. October 1937)

Wholesale Liquor Dealer's Monthly Report
(Summary of Forms 52A and 52B)

Return of the various kinds, quantities of each kind, and total quantity of Distilled Spirits received on, sent out from, and remaining on the premises of......,

(name)

of ........, ............., Supervisory District No. ........, Month of
....................., 19........

(street) (city and state)

Sworn and subscribed to before me this ——— day of ———, 19—.

—————————————————

—————————————————
(Title of officer)

[Seal]

Instructions For Wholesale Liquor Dealers

1. Every wholesale liquor dealer [x] shall keep Record 52 and render monthly transcripts, Form 52A and 52B, and monthly summary, Form 338, with the following exceptions:

(A) A proprietor of a registered distillery or an internal revenue bonded warehouse will keep Form 52C

| | Whiskey (Wine Gals) | Gin (Wine Gals) | Brandy (Wine Gals) | Other Distilled Spirits* | | | | | Misc.** | Tots. |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | (Wine Gallons) | (Wine Gallons) | (Wine Gallons) | (Wine Gallons) | (Wine Gallons) | (Wine Gallons) | (Wine Gallons) |
| On hand first of month, | | | | | | | | | | |
| Received on premises, | | | | | | | | | | |
| Gains, | | | | | | | | | | |
| Totals, | | | | | | | | | | |
| Sent out from premises, | | | | | | | | | | |
| Losses, | | | | | | | | | | |
| On hand end of month, | | | | | | | | | | |
| Totals, | | | | | | | | | | |

*Including cordials, liqueurs, and similar products containing distilled spirits which may be entered in one column. **See Paragraph 4 of instructions.

Remarks: ———————————

—————————————————

I,———————do swear that this return, Form 338, and Form 52A (consisting of pages No. 1 to———), and Form 52B (consisting of pages No. 1 to———) are a full and complete report of all bottled distilled spirits received and disposed of during the month of ———————, 19—, and on hand at the beginning and end of said month, as required by internal revenue law and regulations.

By——————————

—————————————————
(Capacity)

of all distilled spirits shipped from his distillery or removed from his bonded warehouse.

(B) A proprietor of a tax-paid bottling house will keep Form 52D of all distilled spirits received, bottled, and disposed of at his bottling house.

(C) A proprietor of a registered distillery, a fruit distillery, an internal revenue bonded warehouse, or an industrial alcohol bonded warehouse, who maintains tax-paid premises at which tax-paid distilled spirits or alcohol are received, stored, and sold in bulk, and every wholesale liquor dealer who deals in bulk spirits for industrial purposes, shall keep

[x] Every person who sells, or offers for sale, foreign or domestic distilled spirits, * * * in quantities of 5 wine gallons or more to the same person at the same time. (Sec. 3244, R.S., as amended by Sec. 323 (b), Liquor Tax Administration Act.)

quired that a wholesale liquor dealer keep a record on Form 52, which form allows for the recording of all liquors received and all liquors disposed of daily by the wholesale liquor dealer. Form 52 is divided into two parts, one called 52–A and one called 52–B. On Form 52–A the wholesale liquor dealer was required to record within twenty-four hours after the transaction occurred a record of all receipts of liquor in the place of business, showing the distillery or manufacturer with its address, the brand of the liquor, proofage, the quantity and date received. On Form 52–B, the wholesale liquor dealer was required to record the name and ad-

Form 52E, "Monthly Record and Report of Importer or Proprietor of Tax-Paid Premises", of all spirits, both bulk and bottled, received and disposed of at his tax-paid premises: Provided, That if such proprietor or wholesale liquor dealer so desires, he may keep Form 52E for bulk spirits only and Record 52 for bottle spirits only.

(D) An importer who imports and sells distilled spirits in bulk, will keep Form 52E of all spirits, both bulk and bottled, imported and disposed of by him: Provided, That, if the importer so desires, he may keep Form 52E for bulk spirits only and Record 52 for bottled spirits only.

(E) A rectifier will keep Form 45 of all products removed from his rectifying plant, and from his adjacent wholesale liquor-dealer room where such room is maintained and used exclusively for products bottled at his rectifying plant.

(F) A proprietor of a fruit distillery will keep Form 15 of all distilled spirits removed from his distillery.

2. Entries shall be made on Record 52 as indicated by the headings of the various columns and in accordance with these instructions, not later than the close of business of the day on which the transactions occur: Provided, That where the dealer keeps a separate record, such as invoices, approved by the District Supervisor, showing all the data required to be entered on Record 52, part 2, entries of removals of goods from his premises may be made on Record 52 not later than the close of business of the following business day.

3. Under the heading "Address" on Record 52 there will be entered the town or city and State, and if a city, the street and number, of the person from whom received or to whom sent.

4. The wholesale liquor dealer may enter on Record 52, as one item, the total quantity of different kinds of spirits made up from broken cases, sold to the same person on the same day, provided such total quantity is not in excess of 10 gallons. The entry of such items shall be stated as "Miscellaneous" or "Misc." and shall show the date, the name and address of the person to whom sold, and the quantity. However, the total quantity of such spirits so disposed of during the month shall be reported accurately in the monthly summary, Form 338, as "Miscellaneous": Provided, That the wholesale liquor dealer determines by actual inventory the quantity of each kind of spirits remaining on hand at the end of the month.

5. The wholesale liquor dealer need not enter on Record 52, part 2, serial numbers of cases of distilled spirits removed from his premises: Provided, That he keeps in his place of business a separate record, approved by the District Supervisor, showing such serial numbers with necessary identifying data, including the date of removal and the name and address of the consignee. Such separate record may be kept in book form (including loose-leaf books) or may consist of commercial papers, such as invoices or bills. Such books, invoices, and bills shall be preserved for a period of 4 years and in such a manner that the required information may be readily ascertained therefrom, and, during such period, shall be available during business hours for inspection and the taking of abstracts therefrom by Government officers.

Entries shall be made on such separate record not later than the close of business of the day on which the transactions occur. The wholesale liquor dealer, whose separate record has been approved by the District Supervisor, shall note in Record 52, part 2, column 13, that "Serial numbers shown on commercial records, per authority dated ———."

6. The wholesale liquor dealer shall prepare a full and complete transcript of Record 52 and Forms 52A and 52B, and a summary report on Form 338, and forward them to the District Supervisor, Alcohol Tax Unit on or before the 10th day of the succeeding month.

7. Record 52 shall be preserved for a period of 4 years and during such period shall be available during business hours for inspection and the taking of abstracts therefrom by Government officers.

dress of the consignee to whom the liquor was sent, the brand thereof, the quantity and the proofage and the serial number of the individual cases of liquor. The rules as disclosed on Form 338 and appended hereto provide that a wholesale liquor dealer could omit the writing of the serial numbers on Form 52–B, provided such material number, together with other identifying data, was kept on a commercial invoice, to be approved in form by the District Supervisor of the Alcohol Tax Unit. The form of invoice was approved by the District Supervisor of the Alcohol Tax Unit.

The government introduced in evidence Exhibit No. 1, which is the commercial invoice covering the transaction contained in Count 1 of the indictment. The defendants objected to the introduction of Exhibit No. 1 upon the ground that the same was incompetent, irrelevant and immaterial, and that it was a form intended for use in recording the serial number of cases and was not one of the forms required to be kept under the rules and regulations of the Commissioner and approved by the Secretary of the Treasury. The exhibit was admitted in evidence and the defendants allowed their exception.

The Government also introduced in evidence invoices covering all of the other counts of the indictment, all being in the same form and upon the same type of record as Exhibit No. 1, but each having to do with a different transaction or with a different person and different dates.

Over the objection and exception of the defendants the court received in evidence all of the Forms 52–B corresponding to the invoices described in the indictment, all of which showed the entry in Form 52–B to correspond with and be in conformity to the information contained and set forth on the invoices.:

There was no evidence introduced to the effect that the form of invoice on which the false entries were alleged to have been made was approved by the Secretary of the Treasury, but the evidence disclosed that the form was approved by the District Supervisor of the Alcohol Tax Unit.

The evidence further showed that in each instance the address or the name of the consignee was untrue, but that in each instance the invoice was written up as to name and address in accordance with the directions of the purchaser of the liquor shown to have been sold on such invoice.

Upon the close of all the evidence the Government dismissed counts 15, 16, 17, 22, 23, 24, 30, 31, 32, 33, 34, 35, 38, 40, 41, 42, 46, 47 and 48, thereby reducing the number of counts to 29, as to the defendants who were convicted.

### Opinion.

The appellants do not contend that the statute under which they were prosecuted was unconstitutional on account of its delegation of powers to make rules and regulations and to prescribe forms regulating the business of wholesale liquor dealers. They concede that the Forms 52–A and 52–B, required to be used by them as wholesale liquor dealers, were duly and lawfully prescribed by the Commissioner and approved by the Secretary under the authority of 26 U.S.C.A. Int.Rev.Code, § 2857. They do not question that the rules and regulations set forth in the Instructions to Wholesale Liquor Dealers on Form 338 were lawfully prescribed by the Commissioner and approved by the Secretary.[4] Their contentions relate solely to the requirements of Instruction No. 5 on Form 338, reading as follows:

"The wholesale liquor dealer need not enter on Record 52, part 2, serial numbers of cases of distilled spirits removed from

4 See paragraph 16 of a regulation entitled "Records and Transcripts of Wholesale Liquor Dealers including Rectifiers, Distillers, Proprietors of Internal Revenue Bonded Warehouses, Taxpaid Bottling Houses, and Taxpaid Premises, and Importers", and being T.D. 4764, made by Chas. T. Russell, Acting Commissioner of Internal Revenue, and approved September 24, 1937, by Wayne C. Taylor, Acting Secretary of the Treasury; and which was filed with the Division of the Federal Register on September 28, 1937, at 12:02 p. m. Also 26 U.S.C.A. Int.Rev.Code, § 3176; also 26 U.S.C.A. Int.Rev.Code, § 3791; also Treasury Decisions made and filed with the Division of the Federal Register T.D. 4896, Title 26—Internal Revenue Ch. 1, Part 465, Subpart F., App., April 17, 1939, Filed April 18, 1939, 3:56 p. m.; also T.D. 4884, App. February 11, 1939, Filed February 11, 1939; also T.D. 4885, App. February 11, 1939, Filed February 11, 1939, 1:53 p. m.; also T.D. 4764, September 24, 1937, Filed September 28, 1937.

his premises: Provided, That he keeps in his place of business a separate record, approved by the District Supervisor, showing such serial numbers with necessary identifying data, including the date of removal and the name and address of the consignee. Such separate record may be kept in book form (including loose-leaf books) or may consist of commercial papers, such as invoices or bills. Such books, invoices, and bills shall be preserved for a period of 4 years and in such a manner that the required information may be readily ascertained therefrom, and, during such period, shall be available during business hours for inspection and the taking of abstracts therefrom by Government officers.

"Entries shall be made on separate record not later than the close of business of the day on which the transactions occur. The wholesale liquor dealer, whose separate record has been approved by the District Supervisor, shall note in Record 52, part 2, column 13, that 'Serial numbers shown on commercial records, per authority dated ————.' "

As shown in the statement of the facts, the Southwestern Distilled Products, Inc., took advantage of the permission granted by Section 5 to omit from its Form 52 records the serial numbers of cases of distilled spirits removed from its premises with necessary identifying data, including the date of removal and the name and address of the consignee, and it recorded that information upon separate records kept in its place of business, to-wit, upon its commercial invoices.

The point urged by the appellants is that the form of commercial invoice used by Southwestern Distilled Products, Inc., was approved by the District Supervisor and not by the Commissioner with the approval of the Secretary. They contend that because the form of the commercial invoice lacked prescription by the Commissioner and approval by the Secretary, such invoices were not "records required to be kept under the provisions of this section [26 U.S.C.A. Int.Rev.Code, § 2857] and regulations issued pursuant thereto", and that the false entries made by them upon the invoices were therefore not false entries denounced by the section.

It clearly appears that the Commissioner did, with the approval of the Secretary, prescribe clearly and explicitly as set forth in section 5, the essential content of the separate record permitted to be kept by the wholesaler in book form or in the form of commercial papers such as invoices. There is no ambiguity about the requirement that such invoices should show the serial numbers of the cases of distilled spirits removed from the premises with necessary identifying data, including the date of removal and the name and address of the consignee. The invoices falsified by the defendants did purport to contain that required information and the falsifications charged were solely in respect to the names and addresses of the consignees required to be shown therein by the Commissioner with the approval of the Secretary.

We are not persuaded that the invoices, complying as they did with the requirements of the Commissioner approved by the Secretary, fell short of being "records in the form prescribed by the Commissioner with the approval of the Secretary" merely because the District Supervisor was delegated to and did also approve them. Such a delegation of authority to the Supervisor was authorized by 26 U.S. C.A. Int.Rev.Code, § 3170, which was in force at the relevant dates, and provides, "The Secretary is authorized to confer and impose upon the Commissioner and any of his assistants, agents, or employees, and upon any other officer, employee, or agent of the Treasury Department, any of the rights, privileges, powers, duties, and protection conferred or imposed upon the Secretary, or any officer or employee of the Treasury Department, or by any law now or hereafter in force relating to the taxation, exportation, transportation, manufacture, possession, or use of, or traffic in, distilled spirits, wine, fermented liquors, or denatured alcohol. 53 Stat. 373."

See, also, 26 U.S.C.A. Int.Rev.Code, § 3171 (a and b) and 27 U.S.C.A. § 225.

We need not consider what limitations may result from constitutional construction or otherwise upon the delegation of duties authorized by this section. There is no question here of the Supervisor having approved anything in the wholesaler's invoices other than those items of the forms which were specifically prescribed by the Commissioner with the approval of the Secretary. He did not assume to and did not exercise any legislative or regulatory power in merely checking the form of invoice with the prescribed requirements and approving the form that was obviously in compliance with the duly prescribed and approved requirements. We think it is

clear that the records proved to have been falsified by the defendants were records required to be kept under the provisions of 26 U.S.C.A. Int.Rev.Code, § 2857 and regulations issued pursuant thereto, and that the acts of the defendants in making false entries therein were in violation of said section. The judgments and sentences appealed from are accordingly affirmed.