## TWIN CITY TILE & MARBLE CO. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Eighth Circuit.
March 25, 1929.

No. 8133.

Clark R. Fletcher, of Minneapolis, Minn. (E. P. Allen and Thomas Vennum, both of Minneapolis, Minn., and Monte Appel, of Washington, D. C., on the brief), for appellant.

John Vaughan Groner, Sp. Asst. Atty. Gen. (Mabel Walker Willebrandt, Asst. Atty. Gen., and C. M. Charest, Gen. Counsel, and Thomas P. Dudley, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

STONE, Circuit Judge. This is a petition to review the determination of the Board of Tax Appeals denying certain allowances claimed on account of salaries paid by the petitioner in the years 1919, 1920, and 1921.

This controversy involves the proper construction of section 234(a)(1) of the Revenue Acts of 1918 (40 Stat. 1077), and 1921 (42 Stat. 254), which provide that in computing the net income of a corporation there shall be allowed to the corporation certain deductions from its gross income, among which is included "a reasonable allowance for salaries or other compensation for personal services actually rendered."

The essential facts found by the Board of Appeals and treated here as the facts are as follows: Prior to March, 1911, James Taylor, Arne Verlo, Frank Armstrong, F. O. Streed, E. W. Streed and H. B. Watson were a partnership engaged in procuring and performing contracts for installation of tile and marble work in buildings. In March, 1911, the above individuals formed the corporation, here the petitioner, and became stockholders with various holdings. In 1917, T. G. Hidding became a stockholder. In 1919, Watson sold his common stock, retaining certain perferred stock which bore 7 per cent. interest. In 1919, F. A. Streed became a stockholder. All of these stockholders were employed by and devoted their time to the business of petitioner, most of them being officials thereof. From 1911 on, each was paid a salary. Until 1918, the amounts of these salaries were not increased except in two instances, to-wit, Taylor's salary was increased from $1,800 to $2,100 for the year 1917 and that of F. A. Streed (who was a mere draftsman) was progressively increased from $1,020 in 1911, to $1,500 in 1916, which amount continued through 1918, while he was merely an employé and not a stockholder. The net sales of the company amounting to over $112,000 in 1911, increased in 1912, reached over $239,000 in 1913 and then gradually dropped to something over $197,000 in 1917. For the next four years those sales were over $260,000 for 1918, over $212,000 for 1919, over $346,000 for 1920, and over $585,000 for 1921. August 14, 1918, a resolution was passed authorizing a monthly salary increase to the stockholders equal to 9 per cent. of the common stock held by them and dated back to January 1, 1918. Another resolution of May 18, 1920, provided a similar increase of 8⅓ per cent. Two other resolutions of September 6, 1920, and November 14, 1921, while not prescribing that the increase should be based specifically on stock ownership, yet actually used that as a basis in determining the amounts of increase. In short, the amount of common stock owned by each stockholder was the sole criterion or measure of the four increases of salary. The result of these resolutions was materially to increase all the salaries. For example, salaries for 1917, 1918, 1919, 1920 and 1921 were respectively as follows: F. O. Streed, president, $2,400, $3,300, $3,546, $7,823.96 and $9,759.96; James Taylor, vice president, $2,100, $3,000, $3,402, $8,313.04, and $10,505.04; T. G. Hidding, secretary-treasurer, $750, $2,286, $2,611, $6,070.04 and $9,127.50; Frank Armstrong, superintendent, $1,602.95, $2,560, $2,505.60, $6,298.08 and $7,746.58; Arne Verlo, superintendent, $1,751.04, $2,666.66, $2,707.21, $6,480.08 and $8,150.58; E. W. Streed, superintendent, $1,731.18, $2,631.18, $2,492.82, $6,168.66 and $7,966.58.

The petitioner claimed that all of these amounts so paid were salaries and properly deductible under section 234 above. The Commissioner made reductions in each salary aggregating about 25 per cent. in 1919, more than 50 per cent. in 1920, and about 70 per cent. in 1921. The amounts so disallowed form the basis of the tax here involved and the controversy is as to the propriety of the disallowances. The petitioner claims that the compensations allowed by the petitioner were salaries within the meaning of the act; that they were reasonable in amount; that the board has refused to make a finding upon the reasonableness thereof and, therefore, contends that the disallowances were improper. The opposed contentions of the government are that the statute requires that sums claimed as deductions on account of salaries be such, in fact, and not disguised divisions or distributions of income to stockholders; that the burden is upon the taxpayer to make

proof of such fact; that the finding of the board that the sums disallowed were paid not as salaries but as distributions to stockholders is a question of fact and that such finding of fact by the board will not be disturbed by this court if there is any evidence to support it.

We think the position of the government is correct. Of course, a corporation may pay its stockholders, who are also officers or employés, such compensation for their services as it may see fit. However, the question here is not as to the power of the corporation but is solely as to the deductions from taxable income of a corporation permitted by section 234. It is entirely possible to distribute profits to stockholders who are employés or officers under the guise of salaries, and to permit such to be done would be to defeat the statute. Therefore, it is open to inquiry whether the payment claimed by the taxpayer as a deductible salary is, in fact, such, or is, in whole or part, merely a distribution of profits to stockholders (Botany Worsted Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. ——, decided by Supreme Court on January 2, 1929), and the burden is upon the taxpayer to establish his right to such a deduction which has been denied by the Commissioner (Botany Worsted Mills v. United States, supra). Whether such payments are true salaries or are disguised distributions is a matter purely of fact. The determination by the board of a pure question of fact will not be examined by this court beyond ascertaining if there is any evidence to support such finding. St. Paul Abstract Co. v. Commissioner, 32 F. (2d) 225, decided March 25, 1929, this court; Feeders' Supply Co. v. Commissioner, 31 F. (2d) 274, decided February 20, 1929, this court; Denver Live Stock Comm. Co. v. Commissioner, 29 F.(2d) 543, 544, this court; Kendrick Coal & Dock Co. v. Commissioner, 29 F.(2d) 559, 563, this court. In this case, there is not only some evidence but very substantial evidence to sustain the finding that these increases were disguised distributions made to avoid the heavy corporation taxes which became effective in 1918. Some of this evidence is as follows: The increases were based solely upon the amount of common stock holdings and out of all proportion and in no wise based upon the character or amount of services rendered; the increases were effective without respect to the net sales of the company, although in 1919, those sales dropped below the sales for any of the years 1913–1916, inclusive; the resolution of November 14, 1921, took the form of a salary bonus resulting in a lump distribution to the seven stockholders of more than $25,000.

Objection is made that there was no specific finding of fact as to what were reasonable salaries for the services rendered by those to whom these payments were made. The question here really is not concerned with what is a reasonable salary. The evidence shows a distribution of dividends under the guise of salaries. The Commissioner might well have disallowed the entire amounts on the ground that they were not truly salary payments but were disguised distribution of dividends. Any allowance, by him, of any part of such payments was a concession which, under the evidence, he might well have omitted. Certainly, petitioner cannot complain of such action unduly favorable to it. The Board of Tax Appeals well stated the matter as follows:

"The first question to determine is whether the amounts which were disallowed by the respondent as compensation to officers and stockholding employees were paid by the corporation as compensation for services rendered. If the amounts were in fact distributions of profits as determined by the respondent, they would not be allowed as deductions in determining the petitioner's net income. It may be that if the amounts had been paid as compensation, they would have been allowed as being reasonable. In determining whether the amounts were compensation for services or were distributions of profits, all the facts and circumstances must be considered and not merely the fact that the amounts were reasonable. * * * Conceding for the sake of argument that the services of individuals in this case were fairly worth the amounts they received, this fact alone is not sufficient to constitute the amounts compensation. They must have been intended and paid as such. * * *

"We are of the opinion after a consideration of all of the evidence that the petitioner has not shown that the amounts which were disallowed by the respondent were in fact compensation for services rendered and not distributions of profits."

The petition for review should be and is dismissed.