## AM–PLUS STORAGE BATTERY CO. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Seventh Circuit.
September 12, 1929.

No. 4129.

Clyde L. Todd, of Chicago, Ill., for petitioner.

W. P. Hughes, of Washington, D. C., for respondent.

Before ALSCHULER and PAGE, Circuit Judges, and LUSE, District Judge.

LUSE, District Judge. The taxpayer, Am-Plus Storage Battery Company, seeks review, under section 1003(a) of the Revenue Act of 1926 (26 USCA § 1226(a), of the redetermination by the Board of Tax Appeals, in which it affirmed the determination of the commissioner that $9,813.27 of $34,749.76,

salaries and commissions, was excessively allowed to the officers and deducted by the corporation in returning its income for the tax year 1921. Assessment of a deficiency against the corporation resulted.

Section 234(a)(1) of the Revenue Act of 1921 (42 Stat. 227, 254) allowed as deductions: "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. * * *" The Board of Tax Appeals concluded that rejection of the sum of $9,813.27, as a distribution of profits rather than as a reasonable allowance for compensation, was correct.

■■ In view of Avery v. Commissioner (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277, Brown v. Commissioner (C. C. A.) 22 F.(2d) 797, Blair v. Curran, 24 F.(2d) 390, Bishoff v. Commissioner (C. C. A.) 27 F.(2d) 91, and Botany Mills v. U. S., 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379, we start with the propositions that the burden is upon petitioner to establish the invalidity of the deficiency assessment, and that in this court only errors of law will be inquired into. This petitioner concedes, but contends that there was no evidence before the Board from which it might conclude that the compensation allowed to its officers was either unreasonable or constituted a distribution of profits. It is also contended by petitioner that the Board of Tax Appeals failed to apply the rule enunciated in article 105, par. 3, Treasury Department's Regulations 62, and in Austin v. U. S. (C. C. A.) 28 F.(2d) 677, that the circumstances to be considered are those existing at the time the contract is made, and not when the contract is questioned.

The evidence before the board disclosed that the petitioner was organized as an Illinois corporation on May 15, 1919, with a capital stock of $10,000. A few days before, Arthur J. Baracree, theretofore general manager of a storage battery company, and Fred V. Brown, theretofore a buyer of automobile accessories for a large mail order house, agreed to organize the petitioner, each to put in $5,000 in cash, each to give all of his time to the business of the corporation to be organized, and each to receive a flat salary of $5,000, plus 10 per cent. of all business done by the corporation over the sum of $2,500. Upon the organization of the corporation, each of the gentlemen mentioned subscribed for 49 of the 100 shares of the corporation; Mr. Baracree became a director, president, and treasurer of the company, and Mr.

Brown became a director, vice president, and secretary; and the board of directors passed a resolution on May 21, 1919, fixing the compensation of the officers in accordance with the contract above outlined.

In one of the years 1919 or 1920, both officers waived payment of commissions, but in 1921 the petitioner's sales—i. e., gross sales less returned goods—totaled $123,748.78, its invested capital totaled $10,457.62, and its net income was $431.79. Each of the two officers of the corporation was allowed, and paid, his flat salary of $5,000, and $12,374.88 in addition by way of commissions under the contract, making a total of $17,374.88 paid to each, or $34,749.76 to both.

The testimony indicated that Mr. Baracree and Mr. Brown gave their full time to the affairs of the corporation, each giving about one-half of his time to selling and one-half to other duties, such as supervising manufacture, buying supplies, advertising, etc. Two witnesses, including one of the officers, testified that in 1921 it was customary for battery companies to pay salesmen, who paid their own expenses, from 15 per cent. to 20 per cent. of their sales as commissions, and three witnesses testified, in substance, that in their opinion the allowance of $17,374 as full compensation for each of the officers of the company was reasonable. The third witness, however, called by the petitioner, qualified his testimony, and testified, in substance, that in his opinion a deduction of $34,749 for compensation to the two officers of the company, which resulted in the net profits of the company being but $431, was not a reasonable compensation under such circumstances.

While the contract was fair enough as between the officers themselves, and in a sense not unfair to the corporation, inasmuch as the two owned all of its capital stock, nevertheless, from the standpoint of the liability of the corporation to income taxes, the arrangement was quite clearly such as would leave practically no net profits to the corporation, except under most extraordinary circumstances. The evidence shows that the year 1921, with its sales in excess of $123,000, constituted a turnover of the corporation's capital stock more than 11 times, there being no evidence of unusual losses, and if, under such circumstances, the contract resulted in the corporation having no substantial net profits, we think the inference is justified that, normally, such would be the result.

In less prosperous years the profits of the corporation would be less, and of course the compensation of the officers would likewise decrease, so far as based upon commissions.

True, many corporations operate without profits after paying expenses, including salaries; but that is quite different from a situation in which a corporation contracts to compensate its officers on such terms that normally, and in unusual prosperity, the corporation is disabled from showing net profits, and only in prosperity beyond all expectations can the corporation do so.

In the instant case the contract is apparently of that nature, and, in addition, the allowances are on the same basis as the stock ownership of the officers. This latter fact in itself strongly suggests division of profits, when considered in the light of the other facts. Hence the real question here is whether petitioner met the burden on it of showing that the allowances made and deducted were reasonable, leaving no substantial basis for the board to arrive at the contrary conclusion. [3, 4] With respect to the purely opinion evidence adduced, to the effect that, in view of what they did and the results obtained, the compensation allowed to the officers was reasonable, it should be noted that there was no dispute in the evidence with respect either to the work done, or the results achieved, or the experience and ability of the officers. Such opinions, as is usual, were expressed with respect to the point upon which the board was required to pass. Such evidence, while competent and often exceedingly helpful, is not considered binding, in the sense that a tribunal before whom it is adduced is required to accept it, where same is contrary to the tribunal's own judgment of the result of the facts upon which the opinion evidence is based. See The Conqueror, 166 U. S. 110, 17 S. Ct. 510, 41 L. Ed. 937; Bogle Co. v. Commissioner (C. C. A.) 26 F.(2d) 771; Balaban & Katz Corporation v. Commissioner (C. C. A.) 30 F.(2d) 807.

There was uncontradicted evidence that in 1921 it was customary to pay full-time battery salesmen, who paid their own expenses (as did the officers of petitioner) and who were paid on a commission basis, from 10 per cent. to 20 per cent. The evidence does not disclose upon what these percentages were calculated, but the inference is unavoidable that it was upon the sales of each salesman so compensated. That is quite different from a percentage of a concern's gross sales. The evidence also disclosed that in 1921 battery salesmen on a salary basis received from $2,500 to $5,000 per year and expenses. Others received $40 to $50 per week, with an expense account amounting to about the same. There was much additional evidence which need not be detailed, but it seems quite clear that the court cannot say as a matter of law that there was no substantial evidence upon which the board might ground its conclusion that the allowances in question were unreasonably high.

With respect to article 105, par. 3, Treasury Department's Regulations 62, that the circumstances existing at the time the contract is made are to govern, it is apparent that what the 20 per cent. commissions on total sales would amount to was unknown at the time the contract was made; but when the evidence disclosed that, as applied, the contract in fact called for the transfer of substantially all profits to expenses, such expenses to be paid equally to equal shareholders, and the contract having been made by those who were to control the percentage of profit at which sales would be made, we are unable to say, as a matter of law, that there was no substantial evidence from which the board might conclude that, under the circumstances existing at the beginning, the contract was properly to be characterized as effecting a division of profit.

The petition is denied.