## H. LEVINE & BROS., Inc., v. COMMISSIONER OF INTERNAL REVENUE.
### No. 6614.

Circuit Court of Appeals, Seventh Circuit.
Jan. 9, 1939.

Maurice Weinstein, of Milwaukee, Wis., for petitioner.

Maurice J. Mahoney, Sp. Asst. Atty. Gen., for respondent.

James W. Morris, Assistant Attorney General, and Sewall Key and Louise Foster, Special Assistants to the Attorney General, Counsel for Respondent.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This petition seeks to review a decision of the United States Board of Tax Appeals. It involves petitioner's income taxes for the fiscal year ending January 31, 1931, and presents the sole question whether there is any substantial evidence to support the Board's finding as to petitioner's permissible deductions for compensation paid to its officers during that year.

The Board found the following facts: Petitioner is a Wisconsin corporation engaged in the retail sale of ladies' ready-to-wear clothing. It was organized in 1924 as the successor of a partnership founded by Harry Levine and Ben Lewenauer in 1912. In 1931 petitioner's capital stock consisted of 1,286 shares of a par value of one hundred dollars each. Harry Levine and his wife owned 593 shares, Ben Lewenauer and his wife owned 593 shares, and Philip Le-

vine owned 100 shares. They were brothers and were all directors, and held respectively the offices of president, treasurer and secretary of petitioner. It is their compensation which is here in question.

During the taxable year of 1931, petitioner operated two stores in Milwaukee. Ben was manager of one and Philip of the other. Harry exercised a general supervision of petitioner's entire business, managing its financial affairs, arranging all necessary loans, leases and contracts, and conferring regularly with the other two concerning the conduct of the stores.

During the same taxable year one or more of these parties were interested in and served part time in the service of the following business concerns in the vicinity of Milwaukee: Harry was a stockholder, officer, and director of the Boulevard Lane Realty Company, a corporation which owned, and was engaged in developing, Park Ridge subdivision of Milwaukee. Its stockholders were Harry, Ben and one B. T. Saltzstein. It voted salaries for 1930 to Harry and Ben in the respective amounts of $12,500 and $5,000, and claimed deduction thereof in its income tax return for that year. The salaries, however, were not paid and were not reported by the individuals in their returns.

Harry and Ben, with one Bert C. Broude, were the stockholders, directors, and officers of the Bert C. Broude Company, a corporation in charge of the sales business of the Boulevard Lane Realty Company. Harry was secretary of the sales company and spent considerable time in the evenings and on Sundays showing the properties and assisting with sales, all of which required his approval. He also appeared before the county and township boards in obtaining approval of various improvements, such as streets, sidewalks and sewers. For this service he received a salary from the Broude company of $7,500 for the calendar year of 1930, and $5,000 for the calendar year of 1931. Harry was also interested in a number of other more or less inactive corporations, for the most part real estate holding companies, one of which voted him a salary of $1,000 for the calendar year 1931, and deducted that amount in its income tax return.

In addition to having charge of one of petitioner's stores, Ben conferred regularly with Harry and Philip as to the management of the other store, and the conduct of petitioner's business generally. He also

had supervision of the building program of the Boulevard Lane Realty Company, spending a portion of each day consulting with its contractors and builders. He also was interested with Harry in several other corporations, one of which voted him a salary of $1,000 for the calendar year 1930.

Philip was made assistant manager of one store in 1922; he became an officer and stockholder in 1926 or 1927; and was made manager of one of the stores in 1929, when he was about twenty-eight years of age.

During the taxable year of 1931 petitioner had about one hundred and fifty employees, some of whom were for part time. Its income tax return for that year reported $65,559.89 as compensation to employees other than officers.

The petitioner has never declared or paid any dividends up to and including the taxable year 1931, but has voted and paid salaries and bonuses to its officers for the fiscal years and in the amounts following:

| Fiscal year ending | Harry LeVine | Ben Lewenauer | Philip LeVine | Total |
|---|---|---|---|---|
| Jan. 31, 1927 | $21,600 | $21,600 | ...... | $43,200 |
| Jan. 31, 1928 | 12,000 | 12,000 | ...... | 24,000 |
| Jan. 31, 1929 | 13,250 | 19,500 | $11,400 | 44,150 |
| Jan. 31, 1930 | 17,500 | 25,000 | 11,635 | 54,135 |
| Jan. 31, 1931 | 15,000 | 18,500 | 14,000 | 47,500 |

For the same periods petitioner's sales and profits, after deduction of officers' salaries, were as follows:

| Fiscal year ending | Gross sales | Gross profits | Net profits |
|---|---|---|---|
| Jan. 31, 1927 | $654,609.14 | $202,995.88 | $36,349.31 |
| Jan. 31, 1928 | 582,880.11 | 135,319.09 | 12,619.75 |
| Jan. 31, 1929 | 556,954.85 | 147,731.12 | 18,310.49 |
| Jan. 31, 1930 | 593,664.27 | 152,767.59 | 7,373.68 |
| Jan. 31, 1931 | 572,232.43 | 140,113.62 | 5,588.69 |

Its surplus cash and current liabilities on January 31, 1930, and 1931, were approximately as follows:

| | Jan. 31, 1930 | Jan. 31, 1931 |
|---|---|---|
| Surplus | $98,187.38 | $103,305.81 |
| Cash on hand | 12,383.67 | 26,667.22 |
| Current liabilities | 88,000.00 | 60,000.00 |

The Commissioner determined that the amount of $22,500, representing additional compensation or bonuses for 1931, was excessive, and disallowed its deduction. The Board found that reasonable compensation for such years was $10,000 each for Harry and Ben, and $6,000 for Philip. It disal-

lowed the amounts in excess thereof and charged a deficiency tax to petitioner in the amount of $2,956.80.

The petitioner contends that the reasonable value of its officers' services for the year in question was $47,500, as shown by all the material evidence submitted, and that there is no material evidence to support the Board's findings.

Section 23 of the Revenue Act of 1928, 26 U.S.C.A. § 23, relating to deductions from gross income, provides that expenses shall be allowed as deductions in computing net income. It defines expenses as all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered.

Article 126 of Treasury Regulations 74, promulgated under this Act, provides among other things that the test of deductibility in case of compensation payments is whether they are reasonable and are in fact payments purely for services. It uses the following as an illustration: "An ostensible salary paid by a corporation may be a distribution of a dividend on stock. This is likely to occur in the case of a corporation having few shareholders, practically all of whom draw salaries. If in such a case the salaries are in excess of those ordinarily paid for similar services, and the excessive payments correspond or bear a close relationship to the stockholdings of the officers or employees, it would seem likely that the salaries are not paid wholly for services rendered, but that the excessive payments are a distribution of earnings upon the stock."

Article 128 of the same Regulations provides that bonuses to employees will constitute allowable deductions from gross income when such payments are made in good faith and as additional compensation for the services actually rendered by the employees, provided such payments, when added to the stipulated salaries, do not exceed a reasonable compensation for the services rendered. These regulations follow the language of the statute quite closely, no complaint is made of them, and we regard them as fair interpretations of the Congressional intention.

■ Whether the allowances of the directors were purely for services, whether those services were actually rendered, and whether the allowances were reasonable in amounts, are all pure questions of fact, and unless there is no substantial evidence to support the Board's respective answers thereto, we have no authority to disturb those answers. It is unnecessary to here repeat the facts hereinbefore set forth. It is sufficient to say that we think there is substantial evidence to support a negative answer to each question, and this is the substance of the Board's findings with respect to these queries. It is quite true that the officers testified that their salaries as allowed by themselves as directors were reasonable, and it is conceded that the Government used no expert witness to categorically deny these statements. However, this was not necessary, because there were other facts as shown above which the Board was warranted in considering as inconsistent with the officers' statements in this respect. In this event the Board had the right to believe that which it deemed more worthy of credit, and disregard that which could not be reasonably reconciled therewith. See Am-Plus Storage Battery Co. v. Commissioner, 7 Cir., 35 F.2d 167; Wagner & Son v. Commissioner, 9 Cir., 93 F.2d 816; Doernbecher Mfg. Co. v. Commissioner, 9 Cir., 95 F.2d 296.

■ It is further contended by petitioner that there is no evidence whatever to support the Board's finding that its allowances were reasonable. True, no witness testified to the correctness of the Board's estimates in this respect. Indeed there was no specific testimony as to the reasonable value of the officers' services except that of the officers themselves. Under the facts presented, however, the Board was not bound to accept their estimates as true. If, as the Board concluded, the so-called salaries included what was intended as a distribution of profits in the guise of salaries, and was not in fact for personal services actually rendered, it was the duty of the Board to determine what was the reasonable value of the actual official services. In deciding that question it had the right to consider all the evidence, to exercise its own judgment, and it was not required to ascertain such reasonable allowances with mathematical precision. Tumwater Lumber Mills Co. v. Commissioner, 9 Cir., 65 F.2d 675; Atlas Plaster & Fuel Co. v. Commissioner, 6 Cir., 55 F.2d 802. This is not to be construed to authorize the Board to arbitrarily and without substantial evidence fix the amount of compensation for such services, nor was

that done in this case. The burden was upon petitioner to show the incorrectness of the Board's ruling as to the reasonableness of the allowance. They have attempted to do this only by adhering to their original contentions that the directors' allowances were for personal services actually rendered, and not for the division of profits, and by the further fact that their own testimony shows that the allowances were reasonable. The Board on substantial evidence has found adversely as to those original contentions, and we think its conclusion as to the value of the services actually rendered is also supported by substantial evidence.

Order affirmed.