**LYDIA E. PINKHAM MEDICINE CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 3764.

Circuit Court of Appeals, First Circuit.

June 26, 1942.

E. Pinkham and was incorporated in 1882 as the Lydia E. Pinkham Medicine Company. It is engaged in the manufacture, distribution and sale of a product known as "Lydia E. Pinkham Vegetable Compound". Aroline P. Gove, the daughter of Lydia E. Pinkham, was the treasurer of the company since its incorporation until her death in 1939; Lydia P. Gove, the granddaughter of Lydia E. Pinkham, was assistant treasurer from 1925 until her mother's death, and thereafter was elected treasurer. The President, Arthur W. Pinkham, is a grandson of the founder of the business.

In 1921, the capital stock of the taxpayer consisting of 112 shares, was divided into two equal parts designated in the by-laws as the Pinkham and the Gove stock. It is recited in the by-laws that a majority of the Gove stock and a majority of the Pinkham stock constitute a quorum; that there should be six directors, three representing the Goves and three representing the Pinkhams; that the president, one vice president and secretary should be from the Pinkham stockholders, and the treasurer, assistant treasurer and one vice president from the Gove stockholders. There were other provisions to prevent one faction from doing anything without the approval of the other. Article VII, Section 7, of the By-laws, which deals with the question of compensation to the officers and directors, provides:

"The compensation paid to the Gove directors and the Pinkham directors as such shall be determined by the stockholders. Such compensation and salaries shall be so adjusted and apportioned that there shall be an equality between the aggregate salaries received by officers of the company who are the holders of Gove stock and the aggregate salaries received by officers of the company who are holders of Pinkham stock. The aggregate compensation or salaries received by the officers of the company who are holders of or beneficially interested in the Gove stock shall be apportioned among such officers as shall be determined by a vote of the Gove directors; the aggregate compensation or salaries received by officers of the company who are holders of or beneficially interested in the

Joseph W. Worthen, of Boston, Mass., for petitioner for review.

Samuel H. Levy, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Mamie S. Price, Sp. Assts. to Atty. Gen., on the brief), for the Commissioner.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals. It involves income taxes for the years 1936 and 1937. The sole issue is whether the amounts paid in these years to Aroline P. Gove, Treasurer, and Lydia P. Gove, Assistant Treasurer, are deductible as reasonable allowances for personal services actually rendered to the taxpayer under Section 23(a) of the Revenue Act of 1936, 49 Stat. 1648, Ch. 690, 26 U.S.C.A. Int.Rev.Acts, page 827, § 23(a).[1]

The pertinent facts as found by the Board are as follows:

The taxpayer, a Maine corporation, with its laboratories and principal offices in Lynn, Massachusetts, was founded by Lydia

[1] "§ 23. Deductions from Gross Income
"In computing net income there shall be allowed as deductions:
"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *".

Pinkham stock shall be apportioned among such officers as shall be determined by a majority of the Pinkham directors. The compensation or salaries of all other officers and employees shall be fixed by the board of directors. Unless voted otherwise unanimously by the full board of directors, the aggregate compensation and salaries of officers holding each class of stock shall not be less than $20,000 per annum."

In 1928, the aggregate compensation was fixed by the Board of Directors at $60,000. This sum was distributed in each of the taxable years as follows:

| Name | Office | Salary | Director's fees | Total |
|---|---|---|---|---|
| Arthur W. Pinkham | President | $14,000 | $1,000 | $15,000 |
| Daniel R. Pinkham | Vice-President | 6,500 | 1,000 | 7,500 |
| Charles H. Pinkham | Secretary | 6,500 | 1,000 | 7,500 |
| Caroline G. Doty | Vice-President | | 1,000 | 1,000 |
| Aroline P. Gove | Treasurer | 20,000 | 1,000 | 21,000 |
| Lydia P. Gove | Asst. Treasurer | 7,000 | 1,000 | 8,000 |

Aroline was paid $20,000 a year as treasurer since 1926, and Lydia has been paid $7,000 a year since 1928 as assistant treasurer and purchasing agent. The Board found that they had direct supervision of the treasury department of the corporation. The financial affairs of the taxpayer were conducted by its treasury department. This entailed the handling of several bank accounts, matters of foreign exchange, employing six bookkeepers, keeping books, preparing many and frequent reports, supervising all credit problems with almost complete success, keeping records of stock in various warehouses and orders for stock, taking care of all securities owned by the petitioner, disbursing large sums for advertising, and paying all bills, including wages of about one hundred employees.

Lydia P. Gove, as purchasing agent of the corporation, received all bids and supervised all purchases made by the petitioner. She signed about twenty-four hundred requisitions, involving supplies costing from $300,000 to $350,000 in each year. Aroline and Lydia were absent and did not attend to the affairs of the petitioner for a considerable period of time. Aroline was away from some time in May, 1936, until March, 1937, and Lydia from some time in May, 1936, until October, 1936, and then from early in 1937 to March, 1937. It was their custom when attending to the business of the petitioner during the taxable years to go together to the office daily for two or three hours. At these times Lydia signed many checks.

The Commissioner determined the net income of the petitioner for the taxable years to be $504,631.68 and $429,327.53. During this same period the gross sales were $1,244,293.60 and $1,421,943.73. The business was conducted in the United States and in many foreign countries. The sums of $20,000 paid to the treasurer and $7,000 paid to the assistant treasurer as salaries for the taxable years were disallowed by the Commissioner as deductions, on the ground that such payments did not represent reasonable compensation for personal services actually rendered to the taxpayer. Upon petition for redetermination, the Board of Tax Appeals found that the reasonable annual compensation for these services during the years in question was $2,500 for Aroline and $5,000 for Lydia.

The petition urges that since the directors determined the total sums to be paid the officers and directors, their determination is presumptively correct. It is true, as a general proposition, that a determination by the directors of the value of the services rendered to the corporation is entitled to some weight. Ox Fibre Brush Co. v. Blair, 4 Cir., 1929, 32 F.2d 42, 45, 68 A.L.R. 696, affirmed Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733. But we think that the Board was entirely justified in attaching no significance to the determination of the Board of Directors in this case because the payments made to the Goves and to the Pinkhams were in accordance with the stockholding interests of each group, and not as a result of an objective determination of the value of the services rendered by the officers to the petitioner. See General Water Heater Corp. v. Commissioner, 9 Cir., 1930, 42 F.2d 419, 420; Am-Plus Storage Battery Co. v. Commissioner, 7 Cir., 1929, 35 F.2d 167, 169.

A novel argument is made by petitioner that the payments to Aroline and

Lydia should be computed in the aggregate because they represent payments to a group. It is contended that the work of the corporation was divided equally between the Pinkhams and the Goves and that the equal division of the sum allocated to salaries was in accordance with this division of labor. Thus, the only proper way to determine what the value of the services was to the corporation is to add the services of the members of each group, and if in the aggregate the value of these group services is equal to the sums paid to them by the corporation, it is entitled to the full deduction. The petitioner readily concedes that L. Schepp Co. v. Commissioner, 25 B.T.A. 419, is correctly decided but asserts that that case is not controlling. There the Board of Tax Appeals rejected the contention "that the test of the statute must be applied to the single aggregate amount of all officers' salaries". L. Schepp Co. v. Commissioner, supra, 25 B.T.A. pages 428, 429. It concluded that the statute required compensation for personal services rendered and that an excessive salary to one officer could not be offset by a payment to another officer of a sum less than the value of his services to the corporation. The fact that the salaries in the aggregate are reasonable does not satisfy the statutory requirement. The Schepp case, supra, is not, however, authority for the proposition that compensation to a group in no case may be computed in the aggregate for the purpose of determining an allowable deduction for personal services actually rendered. But we do not have before us a set of facts in which the principle of group compensation, assuming without deciding its validity in some instances, is applicable. Here the duties of the various officers were easily definable; they were the typical duties of the officers of the usual corporation. That the activities of Aroline and Lydia were to a large extent commingled is not evidence of the employment of group services by the corporation. Aroline, who was advanced in years, relied heavily upon Lydia with the result that there was an overlapping of activity. There is no evidence that the corporation intended that there should be this fusion of activities. The Board was justified in drawing the inference from the evidence that it was a matter of convenience to Aroline that Lydia was always at her side. It seems to us that the notion of group compensation is an afterthought in order to present some justification for the

manner in which the treasury department functioned. The method of compensation would be of some significance in determining whether the corporation intended to employ the joint services of Aroline and Lydia if it were not for the fact that the by-laws and relevant history of the corporation lead inexorably to the conclusion that each group sought to derive equal benefits from the corporation on the basis of its stock ownership regardless of the services rendered to it.

■ The petitioner strenuously urges that the Board, by its statement that "it is impossible to tell from this record just what services she [Aroline] rendered and just how much they were worth" demonstrates its error in refusing to apply the principle of group compensation. From what we have said it is clear the petitioner's contention is untenable. The fact that the Board could not determine what was specifically done by each in no way supports the argument that group compensation should be applied to this case. The burden was upon the petitioner to show what Aroline and Lydia actually did, and the difficulty of the Board in segregating their activities bears heavily against it. Long Island Drug Co. v. Commissioner, 2 Cir., 1940, 111 F.2d 593, 594; certiorari denied 311 U.S. 680, 61 S. Ct. 49, 85 L.Ed. 438; E. Wagner & Son v. Commissioner, 9 Cir., 1937, 93 F.2d 816, 820.

■■ Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733, is cited in support of the proposition that the payments made to Aroline and Lydia were reasonable for the years in question because of the long service rendered to the corporation by these individuals; that despite the fact that Aroline and Lydia were absent from the affairs of the corporation for a considerable period of time, nevertheless, they were entitled to the sums paid to them because of the assiduousness with which they attended to the financial affairs of the corporation in former years. In the Lucas case, supra, the officers in question had worked for the company for a number of years and had received sums which were not commensurate with the value of their services to the taxpayer. They had taken the corporation out of a condition which was described by the court as chaotic and had brought it to a position where it made large profits. The Board of Directors explicitly recognized that the added sums paid to these individuals were extra com-

pensation for past services to the company. That case is clearly distinguishable. There is no evidence before us that the officers in question were underpaid for the previous years and that the salaries which they received in the taxable years included compensation for past services rendered to the corporation. All that is known is that in the years in question these officers were away from the affairs of the corporation for a long period of time and that other officers who attended to the affairs of the corporation continuously, including the president, the active head of the business, were paid less during this same time. We think the Board was entirely justified in comparing the services rendered by Aroline and Lydia with the services rendered by the other officers and in concluding that the sums paid to Aroline and Lydia were not commensurate with the value of the work done by them for the corporation. Under the circumstances of this case it was proper for the Board to disregard the opinion evidence offered by petitioner's expert concerning sums paid as salaries to similar officers in corporations of corresponding size. See H. Levine & Bros., Inc., v. Commissioner, 7 Cir., 101 F.2d 391, 393; Doernbecher v. Commissioner, 9 Cir., 1938, 95 F.2d 296, 298; Am-Plus Storage Battery Co. v. Commissioner, supra, 35 F.2d page 169.

The question of what constitutes reasonable compensation for services rendered to the corporation is one of fact. E. Wagner & Son v. Commissioner, supra; Twin City Tile & M. Co. v. Commissioner, 8 Cir., 1929, 32 F.2d 229. The determination of the Board is conclusive if there is substantial evidence to support its findings. H. Levine & Bros., Inc., v. Commissioner, supra; Doernbecher v. Commissioner, supra. It is not our function to determine de novo what weight should be given to the facts in question. That we might have allowed a larger sum as a deduction is not determinative of the issue before us. As was said in Wilmington Trust Co. v. Helvering, 62 S.Ct. 984, 986, 86 L.Ed. ——, decided by the Supreme Court April 27, 1942:

"It is the function of the Board, not the Circuit Court of Appeals, to weigh the evidence, to draw inferences from the facts, and to choose between conflicting inferences. The court may not substitute its view of the facts for that of the Board. Where the findings of the Board are supported by substantial evidence they are conclusive. Helvering v. Lazarus & Co. [308 U.S. 252, 60 S.Ct. 209, 84 L.Ed. 226] supra; Helvering v. Kehoe, 309 U.S. 277, 60 S.Ct. 549, 84 L.Ed. 751, and cases cited. Under the statute the court may modify or reverse the decision of the Board only if it is 'not in accordance with law.' 44 Stat. 110, § 1003(b), 26 U.S.C. § 1141(c) (1), 26 U.S.C.A. Int.Rev.Code, § 1141(c) (1)."

Viewed in this light, it is clear that we must sustain the Board for the reason that there is ample evidence to support its conclusion.

The decision of the Board of Tax Appeals is affirmed.