**HELVERING, Com'r of Internal Revenue, v. SUPERIOR WINES & LIQUORS, Inc.**

**SUPERIOR WINES & LIQUORS, Inc., v. HELVERING, Com'r of Internal Revenue.**

**Nos. 12233, 12242.**

Circuit Court of Appeals, Eighth Circuit.
March 22, 1943.

---

Bert Steeper, of Kansas City, Mo., for Superior Wines & Liquors, Inc.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., on the brief), for Guy T. Helvering, Commissioner of Internal Revenue.

Before STONE, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

These appeals are taken from a decision of the Board of Tax Appeals entered July 25, 1941, and involve income and excess profits taxes for 1936 and 1937. The Commissioner's petition for review is No. 12,-233, and the taxpayer's cross-petition is No.12,242. The findings and opinion of the Board are unreported.

### No. 12,233.

The question here presented by the Commissioner's petition is: "Whether the taxpayer, a wholesale liquor dealer, is entitled to deduct as an ordinary and necessary business expense, under Section 23(a) of the Revenue Act of 1936, the sum paid to the Government as a compromise settlement of alleged violations of the federal liquor laws and whether it may also deduct the sum spent for legal fees in connection with such settlement."

It appears, as found by the Board on the trial of the taxpayer's petition for redetermination of deficiency, that Superior Wines and Liquors, Inc., is a Missouri corporation, organized in 1933, having a capital of $24,000, all of its shares of common stock being owned in equal proportions by John B. Blando, Vincent Chiappetta and Vincent Di Giovanni. Blando was president, Chiappetta secretary-treasurer, Di Giovanni vice president, and the three constituted its board of directors. It was engaged in the general business of buying, selling and distributing at wholesale, wines and liquors.

Under the Federal Statutes, 26 U.S.C.A. Int.Rev.Code, § 2857 et seq., and regulations of the Treasury Department, wholesale liquor dealers are required to prepare and keep certain records. Refusal or neglect to provide such records, or to make appropriate entries therein, the making of any false entries therein, or the failure to produce the records when called for by appropriate officers, subjects the offender

to a penalty of $100 and upon conviction, a fine of not less than $100 nor more than $5,000 may be imposed and the offender may be imprisoned for not less than three months nor more than three years.

When taxpayer first began to engage in business it instructed its bookkeeper to confer with the appropriate officers of the Alcohol Tax Unit of the Treasury Department for advice and instructions as to what records were required to be kept, how they should be kept, and how reports should be prepared. The bookkeeper secured such advice and thereafter endeavored to comply with the suggestions and instructions given to him by the representatives of the Treasury Department and to keep the records in the form required by law.

In 1936 the Department, through its proper officers, made a detailed inspection of taxpayer's books and records and ascertained that they were not complete and that they had not been kept in accordance with the statutes and regulations. It was charged (informally) that in certain instances names (allegedly), given by purchasers, were not their real names and in other instances the records indicated that the sales were made for "cash", no names of purchasers or addresses being given. The representatives of the Department advised taxpayer and its officers of the violations and intimated that prosecution would be instituted. Thereupon taxpayer conferred with counsel who advised that unfavorable publicity, loss of business, expense and other inconvenience would probably result from prosecution and trial. He recommended that an offer in compromise be submitted.

During the month of December, 1936, taxpayer, through the collector at Kansas City, Missouri, submitted to the Commissioner of Internal Revenue an offer in compromise. Therein it was stated that charges of violation of law or failure to meet internal revenue obligations had been made against taxpayer because of its failure to make entries in, and properly to keep, its books and records and to submit certain reports. It was also stated that the violation was due to "ignorance of regulations and procedure." In order to secure a release from the liability taxpayer offered to pay the sum of $4,500 in installments as follows: $1,000 December 8, 1936, $300 January 10, 1937, and $300 each succeeding month until the full sum of $4,500 should be paid.

On March 4, 1937, taxpayer filed with the collector of internal revenue at Kansas City, Missouri, another offer in compromise and on that date deposited with him an additional sum of $950. This offer in compromise contained substantially the same statements as the one heretofore referred to. It, however, tendered the sum of $2,250 and contained a typewritten addendum reading as follows: "This offer of a total cash payment of $2,250 in full is made in lieu of and in place of previous tentative offer dated December 9, 1936, in the sum of $4,500 payable $1,000 with offer and $300 monthly, $1,300 on said tentative offer being on deposit with the internal revenue collector at Kansas City, Missouri. Copy of said tentative offer is attached hereto, it being understood that this cash offer of $2,250 is to be substituted for the installment offer heretofore submitted."

The District Supervisor of the Alcohol Tax Unit recommended the acceptance of the last mentioned offer in compromise and under date of April 23, 1937, the Commissioner, with the advice and consent of the Secretary of the Treasury, closed the case by acceptance of it.

Taxpayer paid the sum of $460 to its counsel for his advice and assistance in disposing of the controversy and for preparing and submitting the offers in compromise.

In a schedule attached to taxpayer's return for the year 1936 entitled "Other Deductions Authorized by Law", taxpayer included,

| | |
|---|---|
| U. S. Government Fine | $2,250 |
| Legal Expenses | 460 |
| | $2,710 |

These amounts were disallowed as deductions, the deficiency notice stating: "Amounts paid to avoid a suit for violation of a Federal statute, either as attorney fees or in compromise settlement, are not deductible in determining taxable net income under the Revenue Act of 1936."

### Opinion.

 On the above facts the Board concluded that the described payment of $2,250 plus $460, "was made to compromise [taxpayer's] civil liability or at most to abate a proposed penalty", and that "under the rationale of Kornhauser v. United States, 276 U.S. 145, it is deductible." We think that the conclusion reached by the

Board was erroneous and that the $2,710 which the taxpayer paid was not deductible as an ordinary and necessary expense in carrying on its business of a wholesale liquor dealer in the year in question. We had occasion to consider the obligations which the law and regulations impose upon wholesale liquor dealers in respect to promptly and truthfully recording and keeping available to inspection the true names and addresses of those to whom they sell intoxicating liquors and the penalties prescribed for failure to keep the required records in Dixon v. United States, 8 Cir., 116 F.2d 907, and we there quoted 26 U.S. C.A. Int.Rev.Code, § 2857, which states the penalties for violation of its provisions.[1] In the formal offer of compromise which the taxpayer herein signed and submitted to the Commissioner, it is stated that charges of violation of law had been made against it "through failure to make entries in and properly keep Form 52 as prescribed by law" and the Board's finding that the charges against the taxpayer included entering names of liquor purchasers which were not the real names and that "in some instances the records indicated that the sales were made for cash, no names of purchasers or addresses being given" is in accordance with the evidence. The statute prohibiting the acts charged against the wholesale liquor dealer is strictly penal and the penalties are prescribed to measure the punishment for acts which tend to subvert the regulation of the traffic in intoxicating liquors. Therefore the money which a wholesale liquor dealer is required to pay as a result of violating the statute either by way of compromise of the penalties or in satisfaction of judgment on account thereof can not be deducted from income as an ordinary or necessary expense of conducting the wholesale liquor business.

In United States v. Jaffray, 8 Cir., 97 F.2d 488, this court determined on full consideration that the amount paid by taxpayers in compromise of penalties assessed against them for "negligent understatement of tax liability for previous years" was not deductible from gross income as ordinary and necessary expense. The nature of the dereliction from which the penalties and compromise payment resulted in that case and our decision there, compels reversal of the Board's decision here. We think

the facts in Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505, plainly distinguish it from this case. Decision in No. 12,233 is therefore reversed with direction to sustain the deficiency.

### No. 12,242.

This cross appeal by the taxpayer seeks reversal of the Board's holding that $6,000 was a reasonable salary for each of the corporation taxpayer's three officers in 1937. The Board found the facts as follows:

"At a special meeting of the directors held on the 15th day of September, 1933, and attended by all three of them, it was resolved that beginning on the first day of January, 1934, the monthly salary of each of the officers should be $350. At a similar meeting held on the 16th day of December, 1935, and attended by the same three directors, it was resolved that beginning with the first day of January, 1935, the monthly salaries of the three officers should be $500 each. At a similar meeting held on the 31st day of December, 1936, and attended by the same three, it was

"'* * * Resolved that the accrued salary of each of the officers having accrued to date in the sum of $9,000 each, a total of $27,000 that the same is turned in to the treasury as a surplus and the officers hereby waive the same and said money shall be used for company purposes and the same is hereby accepted by the company.'

"At a similar meeting held on the 31st of December, 1937, and attended by the same three, it was resolved '* * * that the salary for the years 1937 and 1938 shall be $9,000 per year for each of the officers.'

"The corporation never declared or paid a dividend during or preceding any of the years in issue in this proceeding.

"Taxpayer was short of capital and the officers had adopted the policy of withdrawing only so much of their respective salaries as was necessary to provide for their needs. Di Giovanni also made loans to the company on open account without any security. The following schedule shows the opening balance and closing balance of Di Giovanni's loans to the company on

---

[1] Upon the failure of a wholesale liquor dealer to keep the required records, such dealer shall pay a penalty of $100 and on conviction may be fined and imprisoned.

open account and the opening and closing balances of the salary accounts of the three officers.

the repeal of the Eighteenth Amendment. The earnings of the three stockholders while in this business varied, being 'from

| | | | Opening Balance | Closing Balance |
|---|---|---|---|---|
| Loans to Company on Open Account Without Security— | | | | |
| Vincent DiGiovanni | | | | |
| | Year | 1936 | $ 615.00 | $ 7,479.50 |
| | Year | 1937 | 7,479.50 | 15,206.00 |
| Salary Account— | | | | |
| Vincent DiGiovanni— | Year | 1934 | ....... | 3,900.00 |
| | Year | 1935 | 3,900.00 | 8,485.00 |
| | Year | 1936 | 8,845.00 | 9,000.00 |
| | Year | 1937 | 900.00 | 5,472.50 |
| John B. Blando— | Year | 1934 | ....... | 3,900.00 |
| | Year | 1935 | 3,900.00 | 7,750.00 |
| | Year | 1936 | 7,750.00 | 9,472.25 |
| | Year | 1937 | 472.25 | 6,917.75 |
| Vincent Chiappetta— | Year | 1934 | ....... | 3,900.00 |
| | Year | 1935 | 3,900.00 | 7,800.00 |
| | Year | 1936 | 7,800.00 | 9,000.00 |
| | Year | 1937 | ....... | 5,772.50 |

"The following schedule summarizes the operations of the business as reflected in taxpayer's returns of income for the years from 1934 to 1937, inclusive.

| | 1934 | 1935 | 1936 | 1937 |
|---|---|---|---|---|
| Gross sales | $208,973.16 | $364,874.64 | $615,034.08 | $723,849.41 |
| Other income | 269.13 | 55.25 | 938.69 | 1,884.51 |
| Total income | $209,242.29 | $364,929.89 | $615,972.77 | $725,733.92 |
| Less allowances | 2,323.16 | 3,679.22 | 4,300.03 | 2,485.72 |
| Net Sales | $206,919.13 | $361,250.67 | $611,672.74 | $723,248.20 |
| Cost of Sales | 169,498.51 | 311,728.50 | 547,481.24 | 644,364.91 |
| Gross Profit on Sales | $ 37,420.62 | $ 49,522.17 | $ 64,191.50 | $ 78,883.29 |
| Operating Expense | 23,205.41 | 28,369.19 | 40,439.59 | 47,354.81 |
| Net income before Officers' salaries | $ 14,215.21 | $ 21,152.99 | $ 23,751.91 | $ 31,528.48 |
| Officers' salaries | 12,600.00 | 18,000.00 | 18,000.00 | 27,000.00 |
| Net taxable income | $ 1,615.21 | $ 3,152.99 | $ 5,751.91 | $ 4,528.48 |
| Tax paid | $ 220.09 | $ 433.54 | $ 944.21 | $ 724.45 |

"For several years preceding the organization of taxpayer its three stockholders, with others, had been engaged in business as a partnership under the name of Northside Distributing Co. This company had specialized in the sale of sugar, yeast and kindred products. It was in existence some four or five years prior to seven, eight or nine thousand (dollars) a year.'

"Blando's special duties as an officer of taxpayer during the taxable years consisted in purchasing merchandise and in acting as a salesman and sales manager. He hired and discharged the salesmen, instructed and supervised them and spent consider-

378

able time making sales. During the year 1937 he sold approximately 38 percent of the merchandise which the company sold during that year. Chiappetta was credit manager, in charge of the office help, had general supervision over taxpayer's books and records, paid the bills, made out orders and sold merchandise aggregating approximately 24 percent of the total sales made by the company during the year 1937. Di Giovanni was in charge of the shipping and receiving rooms, kept a daily inventory of the merchandise, recommended replacements and was responsible for seeing that no merchandise was stolen or unaccounted for.

"Pursuant to the salary resolution of December 16, 1935, there was credited on the books of taxpayer to the officers' salary account $500 for each officer during each month, the amounts so credited aggregating $6,000 for each officer, or a total of $18,000. During the same period Blando withdrew $2,554.50, Di Giovanni withdrew $4,427.50 and Chiappetta withdrew $3,227.-50. Pursuant to the salary resolution of December 31, 1937, an additional amount of $3,000 was credited on that date to the salary account of each of the three officers on taxpayer's books.

"$6,000 per annum for each of the three stockholders, officers and directors of taxpayer or the aggregate amount of $18,000, constituted reasonable compensation for the services rendered by them during the taxable year."

The opinion of the Board discloses that it fully and carefully considered the contentions made for the taxpayer and the elements necessary to its determination of what constituted reasonable compensation.

### Opinion.

■ Where, as in this case, three men who own all of the stock of their corporation carry on its business themselves and thereby produce corporation income in respect to which a tax is due the government, they must be required to exercise good faith in their accounting and return of income to the government. As they do the work and the investment in the capital stock of the corporation is their own, they have a wide latitude to use their own without injury to others, but having adopted the corporate form they are subject to the tax laws and regulations applicable to corporations.

■ They may satisfy the corporation's credit and creditor relations when they apply the earnings to salaries for themselves and enter such amounts on the corporation's books to surplus. But their right to make such application is not absolute in respect to income tax relations between the corporation and the government. There the law and regulations compel honest and good faith determination of the fair and reasonable amounts of the corporation's assets applicable to such salaries and permit deduction from the corporation's income of only such amounts for salaries as are reasonable under all the circumstances. The question whether the amounts allowed to the officers for salaries in this case were reasonable is a question of fact and the Board's finding as to the amount which constituted a reasonable salary may not be disturbed where it is supported by substantial evidence. Twin City Tile & M. Co. v. Commissioner, 8 Cir., 32 F.2d 229; L. E. Pinkham Med. Co. v. Commissioner, 1 Cir., 128 F.2d 986; Long Island Drug Co. v. Commissioner, 2 Cir., 111 F.2d 593. It is unnecessary to restate here the details of the taxpayer's business or the arguments concerning the possible inferences that might be drawn from minutiae of evidence. The findings of the Board are not without substantial evidence to support them and full consideration has been given to the arguments in favor of a conclusion contrary to that drawn by the Board.

We find no error and affirm.

Reverse in No. 12,233, and affirm in No. 12,242.