**ROTA-CONE OIL FIELD OPERATING CO. v. COMMISSIONER OF INTERNAL REVENUE.**

**MUNICIPAL SECURITIES CO. v. COMMISSIONER OF INTERNAL REVENUE.**

Nos. 3691, 3692.

United States Court of Appeals
Tenth Circuit.

Nov. 24, 1948.

L. Karlton Mosteller, of Oklahoma City, Okl., for petitioners.

Wm. B. Waldo, of Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., and George A. Stinson, Ellis N. Slack and Louise Foster, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

These cases were submitted together and may be decided in like manner. The first concerns the income tax, excess profits tax, and declared value excess profits tax liability of Rota-Cone Oil Field Operating Company, a corporation organized under the laws of Oklahoma and sometimes hereinafter referred to as Rota-Cone, for the calendar year 1941, the income tax and excess profits tax liability of Rota-Cone for the calendar year 1942, and the income tax and excess profits tax liability of Municipal Securities Company, a corporation organized under the laws of Oklahoma and sometimes hereinafter referred to as Municipal, for the calendar years 1941 and 1942. Rota-Cone and Municipal were closely related in business, and they were also closely related in business to Green Engineering Company and Lewis Supply Company. The persons chiefly interested in the affairs of the companies were Tom L. Green, Sr., his son, his brother, and a secretary. Rota-Cone and Municipal submitted separate tax returns for the years involved. The Commissioner of Internal Revenue imposed deficiency assessments against each company. The Tax Court on redetermination sustained the assessments, except in respect to certain items not presently involved; and the two companies separately sought review.

Rota-Cone advances the contention that the Tax Court erred in failing to find that Rota-Cone, Allied Realty & Investment Company, now Municipal, and Green Engineering Company, were joint venturers; that the property and profits of the joint venture were owned by the three companies in the ratio of forty-five per cent, thirty per cent, and twenty-five per cent, respectively, erred in finding that Rota-Cone did not operate as a joint venture on behalf of itself and the other two companies, and erred in failing to find that fifty-five per cent of the gross income and fifty-five per cent of the gross deductions during such years were not the gross income and gross deductions of Rota-Cone but were those of its joint venturers. Rota-Cone introduced in evidence an agreement executed by Green Engineering Company, Allied Realty & Investment Company, the son, and the brother of Tom L. Green, Sr., and the secretary. It was dated September 30, 1937, and provided among other things that the three individuals should form a new corporation to go into the oil well conditioning business with Green Engineering Company and Allied Realty & Investment Company on a joint venture basis; and that all joint venture property and profits should be owned on the basis of the new corporation forty-five per cent, Allied Realty & Investment Company thirty per cent, and Green Engineering Company twenty-five per cent. It is fairly apparent from the record that Rota-Cone was the new corporation to which the contract referred. But Rota-Cone was not a party to the agreement. It did not formally ratify the agreement. And there was little or

nothing shown at the trial before the Tax Court from which an implied acquiescence could be inferred. There was no affirmative showing that Rota-Cone operated under the agreement or followed its provisions. No accounts were kept to carry out the agreement, and the books of Rota-Cone failed to reflect any distribution of profits to the other companies on the basis of joint venturers. Rota-Cone did not file tax returns which were required of joint adventurers. Instead, it filed regular corporation returns in which the information given was that of a corporation engaged in business by itself. Rota-Cone adduced testimony that the agreement was signed on September 30, 1937. But a revenue agent who made an investigation of the deductions claimed by Rota-Cone testified that in 1944 Tom. L. Green, Sr., told him that there was no written agreement between the companies; and that since they were related and the books were kept in the same office, they did not feel that there was any reason for the execution of a written agreement. This resume of the pertinent facts and circumstances indicates clearly that the Tax Court was well warranted in its conclusion that Rota-Cone was carrying on its business as a corporation and not as a joint venture on behalf of itself and others; that for tax purposes, all of the income received by it during the years in question was its gross income; and that for tax purposes no part of such gross income was to be treated as belonging to others.

 Municipal challenges the decision of the Tax Court on the ground that it erred in sustaining the action of the Commissioner in disallowing deductions claimed as losses in the operation of a gift shop. Section 23(f) of the Internal Revenue Code, 26 U.S.C.A. § 23(f), provides that in computing net income, a corporation may claim as a deduction losses sustained during the taxable year and not compensated for by insurance or otherwise. The burden rested upon Municipal to show that it did in fact sustain the losses claimed as deductions. In its effort to discharge the burden of proof, Municipal offered the testimony of Green, the testimony of the secretary, and the books of the company. Green testified that as the principal executive officer of Municipal, he had been investigating real estate in the area of Albuquerque, New Mexico; that it was necessary to obtain space for headquarters which were also used by him for living quarters while he was in Albuquerque to carry on the business of Municipal; that it was necessary to have someone that he could trust in the headquarters to look after the business while he was in Oklahoma City; that he needed his daughter there just to be around and take care of the business during his absence; that she wanted something else to do; that it seemed advisable to open and operate the gift shop in order to cut down the cost of the building rented; that the gift shop was in the front of the store building rented, in front of the business headquarters of the business; that the whole thing was paid for and operated by Municipal; and that the checks were written by that company. But there was no showing that Municipal ever authorized the establishment and operation of the gift shop. Moreover, Green filed a suit in the state court in New Mexico relating to the gift shop, and a certified copy of the pleadings in the case was offered in evidence. The suit was filed in the name of Green, not that of Municipal. One purpose of the action was to recover money which had been paid to one Joe Lynch with which to purchase merchandise for the shop. It was alleged in the complaint that Green had informed Lynch that he was opening the shop for his daughter to own and operate, and it was further alleged that some of the money advanced to Lynch was advanced by Municipal and some by Green personally. With the ledger sheets of Municipal before her, the secretary, who also kept the books, testified that Municipal invested a certain amount in the shop, got back a certain amount in return, had a small amount of inventory on hand, and suffered a certain loss. But she further testified that Green did not have a bank account; that he handled many personal items without a bank account; that he had a drawing account on the books of the company; and that when he drew checks for himself personally, she charged them to his drawing account. The gift shop transactions appeared in an account in the

books of Municipal under the heading "Albuquerque Gift Shop." Certain entries in the account were explained merely with the name of the daughter of Green; and certain entries indicated that they represented disbursements made for rent, for attorney's fees in the suit brought against Lynch, and for settlement of such suit. Characterizing the record as containing contradictory, inconsistent, and inadequate statements by Green, the Tax Court held that it did not justify a finding that the investments and losses were those of Municipal rather than of Green. The effect of the finding was to resolve against Municipal the issue of fact whether it established and operated the gift shop and sustained the alleged losses. The findings of the evidentiary facts made by the Tax Court were supported by substantial evidence and the inferences fairly to be drawn from it, and the conclusion drawn from such facts was not clearly erroneous. Therefore they must stand on review.

Municipal urges the further contention that the Tax Court erred in disallowing in part as deductions amounts paid to Green representing salary for services rendered during the years in question. In its return for 1941, Municipal claimed as a deduction $10,593.18 representing salary or compensation paid Green; and in its return for 1942, it claimed a like deduction in the amount of $10,000. The Commissioner allowed a deduction of $6,000 for each year and disallowed the additional amounts. The Tax Court found that $6,000 was reasonable and that the amounts above that figure were excessive. Section 23(a)(1)(A) of the Internal Revenue Code, 26 U.S.C.A. § 23(a)(1)(A), provides that in computing net income there shall be allowed as deductions all the ordinary and necessary expenses incurred or expended during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services rendered. Again, the burden rested upon Municipal to show that the amounts claimed as deductions were reasonable. The testimony of Green was virtually all the evidence adduced relating to the issue. He testified that he devoted from thirty to fifty per cent of his time working for Municipal. He also devoted part of his time to working for Rota-Cone and received from it an annual salary of $5,000. He likewise received compensation from Green Engineering Company, but the exact amount is not shown. And in addition to all of that, he did a small amount of work as consultant for others, for which he received $100 per day when in Oklahoma City and $200 per day when elsewhere. The question whether a salary paid for personal services rendered was reasonable in amount and therefore deductible under the statute as an ordinary and necessary business expense was one of fact for the Tax Court. E. Wagner & Son v. Commissioner, 9 Cir., 93 F.2d 816; Long Island Drug Co. v. Commissioner, 2 Cir., 111 F.2d 593, certiorari denied, 311 U.S. 680, 61 S.Ct. 49, 85 L.Ed. 438; Lydia E. Pinkham Medicine Co. v. Commissioner, 1 Cir., 128 F.2d 986, 145 A.L.R. 827, certiorari denied, 317 U.S. 675, 63 S.Ct. 80, 87 L.Ed. 542; Helvering v. Superior Wines & Liquors, Inc., 8 Cir., 134 F.2d 373; Miller Manufacturing Co. v. Commissioner, 4 Cir., 149 F.2d 421; Clinton Co. v. Commissioner, 7 Cir., 159 F.2d 102; Gem Jewelry Co. v. Commissioner, 5 Cir., 165 F.2d 991, certiorari denied, 334 U.S. 846, 68 S.Ct. 1516. On the facts and circumstances disclosed by the record, we are of the view that the Tax Court was warranted in its conclusion that the deductions claimed as salary paid to Green in excess of $6,000 per year were unreasonable and excessive.

The decisions of the Tax Court are severally affirmed.