**UNITED STATES of America,**
**Plaintiff,**

v.

**ALCATEX, INC., et al., Defendants.**

**No. 66 Civ. 2411.**

United States District Court,
S. D. New York.

June 7, 1971.

Whitney North Seymour, Jr., U. S. Atty., for the S. D. of New York, for plaintiff; T. Gorman Reilly, New York City, of counsel.

Law Firm of Malcolm A. Hoffmann, New York City, Attys., for defendants, Alcatex, Inc. and Fred Alcott; Malcolm A. Hoffmann, Malcolm H. Bell, New York City, of counsel.

Raphael P. Koenig, New York City, for defendant, Arthur A. Seidman.

## OPINION

FRANKEL, District Judge.

This is a motion by defendants for summary judgment under a complaint filed by the Government on August 4, 1966. Brought under 19 U.S.C. § 1592,[1] the complaint alleges that the defendants imported 101,792 yards of silk pongee in 1959 and 1960; that this silk had originated in the People's Republic of China; that the importations and connected transactions violated the Trading with the Enemy Act, § 5(b), 50 U.S.C. App. § 5(b), and regulations thereunder, 31 C.F.R. § 500.204(a) (i), (ii); and that the defendants caused the silk to be imported by filing entry and declaration documents containing false and fraudulent representations that the silk had originated in Italy. The Government seeks, in the words of 19 U.S.C. § 1592, to "subject to forfeiture" the value of the imported silk (allegedly $199,376), and also asks interest and costs.

The motion for summary judgment relies primarily on the double jeopardy clause of the United States Constitution,[2] and the doctrine of res judicata and collateral estoppel. These defenses all relate to a prior criminal proceeding, under a 1964 indictment, against the four defendants in the present action. The 1964 indictment, the trial of which was held in June 1968, accused the defendants of wilfully and knowingly importing mainland China silk on various dates in 1959 and 1960, in violation of the Trading with the Enemy Act, 50 U.S.C. App. § 5(b), and regulations thereunder, 31 C.F.R. §§ 500.204, 500.329, and 500.-701 (six counts); of making material false statements about the country of origin of the silk, 18 U.S.C. § 542 (six counts); and of conspiracy to commit these offenses, 18 U.S.C. § 371. Defendants Alcatex, Inc., and Alcott were convicted of five of the six alleged violations of the Trading with the Enemy Act, and Alcatex, Inc., Alcott and Seidman were found guilty on the conspiracy charge. At the conclusion of the Government's case, the Court dismissed the false declaration counts against Alcatex, Inc., Alcott, and Seidman, as well as the

---

1. "If any consignor, seller, owner, importer, consignee, agent, or other person or persons enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or makes any false statement in any declaration under the provisions of section 1485 of this title (relating to declaration on entry) without reasonable cause to believe the truth of such statement, or aids or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement; or is guilty of any willful act or omission by means whereof the United States is or may be deprived of the lawful duties or any portion thereof accruing upon the merchandise or any

portion thereof, embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission, such merchandise, or the value thereof, to be recovered from such person or persons, shall be subject to forfeiture, which forfeiture shall only apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles of merchandise to which such fraud or false paper or statement relates. The arrival within the territorial limits of the United States of any merchandise consigned for sale and remaining the property of the shipper or consignor, and the acceptance of a false or fraudulent invoice thereof by the consignee or the agent of the consignor, or the existence of any other facts constituting an attempted fraud, shall be deemed, for the purposes of this section, to be an attempt to enter such merchandise notwithstanding no actual entry has been made or offered."

2. " * * * [N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb * * *." U.S.Const. Amend. V.

Trading with the Enemy counts against Seidman. Ross, whose whereabouts is unknown and who has never been served in the present action, was not tried on the criminal charges. Although a prison term was a possible sanction under all the statutes involved in the first proceeding, the punishment imposed upon Alcatex, Inc., Alcott and Seidman was a fine of $3,000 each.

## I.

In support of their double jeopardy claim, defendants argue that the present suit is brought on the same facts as those involved in their criminal trial, and that, although "civil" in caption, it attempts to assess a second penalty.[3]

Defendants acknowledge that "Congress may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." Helvering v. Mitchell, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938); see also Rex Trailer Co. v. United States, 350 U.S. 148, 150–151, 76 S.Ct. 219, 100 L.Ed. 149 (1956). The significant disagreement centers on whether 19 U.S.C. § 1592 should be viewed as a "criminal" statute for double jeopardy purposes.

■ The case is controlled in this aspect by the principles of Helvering v. Mitchell, *supra*. There, Mitchell had been acquitted in a criminal trial for tax evasion. Subsequently, the Commissioner of Internal Revenue found for the same year a tax deficiency due to fraud, and ordered payment of the deficiency plus a 50% additional assessment, to-

gether totalling over a million dollars. Mitchell's double jeopardy defense against the penalty was rejected. The Court found that the 50% extra assessment was not "punitive" but "remedial," 303 U.S. at 400 n. 3, 58 S.Ct. 630, 82 L. Ed. 917, and should properly be deemed an "indemnity for loss" (*id.* at 401, 58 S.Ct. at 634, 82 L.Ed. 917):

> "[S]anctions imposing additions to a tax * * * are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud * * *." *Id.*

The Court went on to say that "Congress provided a distinctly civil procedure for the collection of the additional 50 per centum"—indicating "clearly that it intended a civil, not a criminal, sanction" (*id.* at 402, 58 S.Ct. at 634, 82 L. Ed. 917). It noted that the Revenue Act "contains two separate and distinct provisions imposing sanctions, and that these appear in different parts of the statute, [which] helps to make clear the [civil] character of that here invoked" (*id.* at 404, 58 S.Ct. at 636, 82 L.Ed. 917).

Results essentially similar for present purposes were reached in United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed 443 (1943), and Rex Trailer Co. v. United States, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956). Defendants cite some older cases roughly in the area, easily distinguishable at least for double jeopardy purposes and not requiring extended discussion here.[4]

---

3. The original answers, filed in 1966 by three defendants (two of whom have changed counsel), fail to allege the four affirmative defenses offered as the basis for the present summary judgment motion. Defendants now move for leave to amend their answers to allege these defenses. The Government states that it does not oppose this motion "provided that it be allowed to amend the complaint, as and if deemed necessary, to meet the newly asserted defenses." The court will

grant defendants' motion to amend. There is no need to rule in advance upon possible amendment of the complaint, which will be judged, of course, in light of the present circumstances and upon the basis of familiar principles if and when such rulings become necessary.

4. Coffey v. United States, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684 (1886), has not won critical acclaim, see 1B Moore's Federal Practice 2854–55 (2d ed.), but it did

Defendants attempt to distinguish the compelling authority against them by urging that in these previous cases the second suit could be seen as remedial or civil, but that here, especially because the Government suffered no specifically identified injury, the second suit has no remedial purpose and must be viewed as being purely "punitive." Under the precedents, however, and an analysis of 19 U.S.C. § 1592 in their light, the attempted distinctions fail.

The Tariff Act of 1930, under "Part V—Enforcement Provisions" (46 Stat. 747), enacted the two separate sections that have become 18 U.S.C. § 542 and 19 U.S.C. § 1592. The former, captioned "Fraud—Personal Penalties," was § 591 of the Act (46 Stat. 750); the latter, captioned "Same—Penalty against Goods" (*id.*), was § 592. The former, providing for fines and imprisonment upon "conviction," conveyed the purpose to embody a "punitive criminal element." Helvering v. Mitchell, *supra*, 303 U.S. at 399, 58 S.Ct. 630, 82 L.Ed. 917. The latter was equally "clearly intended as civil." *Id.* at 404–405, 58 S.Ct. 630, 82

L.Ed. 917. Congress could and did order both kinds of sanctions, distinguishing them. There is no ground in reason or precedent for frustrating that design.[5]

A provision for forfeiture may be given effect as a "civil" remedy, free for double jeopardy purposes "of the punitive criminal element." Helvering v. Mitchell, *supra* at 399, 58 S.Ct. 630, 82 L.Ed. 917; and see *id.* at 400, 58 S.Ct. 630, 82 L.Ed. 917; United States ex rel. Marcus v. Hess, *supra*, 317 U.S. at 551, 63 S.Ct. 379, 87 L.Ed. 443.[6] That the statute may in a sense be "punitive" is not by itself determinative. Congress may provide for recovery by the United States, as well as by other civil damage claimants, of "punitive" damages above and beyond neatly measurable elements of "compensation." At the same time, the Government is on firm ground when it characterizes the statute here in question as being broadly "remedial." The Government in cases like this may fairly be presumed to have suffered injury. First, in order to further the purposes of the pertinent statutes, there is the

not go on double jeopardy in any event. United States v. La Franca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551 (1931), construed a scheme of prohibition legislation notably distinguishable from the one here and, again, bypassed any double-jeopardy ruling. *Id.* at 575, 51 S.Ct. 278, 75 L.Ed. 551. See Helvering v. Mitchell, *supra*, 303 U.S. at 406, 58 S.Ct. 630, 82 L.Ed. 917.

5. Among the stultifying results of defendants' position would be an effective rule rendering the two provisions mutually exclusive. It seems plain that the penalties sought in this suit could not be exacted in a criminal prosecution. Likewise, the sanctions of fine and imprisonment could not be ordered in a proceeding of the present nature. Congress evidenced no purpose to achieve or permit such mutual exclusivity. Of course, if the Constitution commanded it, that would control. But it would take a demonstration transcending anything defendants muster to establish such a command.

6. Defendants rely heavily upon a few cases holding that forfeiture proceedings are "quasi-criminal" for purposes of deciding whether a particular rule of procedure is

applicable. But a ruling, to deal only with defendants' main example, that the Government cannot seize evidence in violation of the Fourth Amendment for use in a forfeiture proceeding, One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (Pennsylvania forfeiture statute); John Bacall Imports, Ltd. v. United States, 287 F.Supp. 916, 925 (C.D.Cal.1968), aff'd in part, rev'd in part, 412 F.2d 586 (9th Cir. 1969) (19 U.S.C. § 1592); Boyd v. United States, 116 U.S. 616, 633–634, 6 S.Ct. 524, 29 L.Ed. 746 (1886), is designed to expand that Amendment's protection of privacy and security, and rests on different factors and values than those involved here. What the Government has unlawfully seized, it may well have no business keeping simply because a proceeding is captioned "civil." As Helvering v. Mitchell notes, 303 U.S. at 400 n. 3, 58 S.Ct. at 633, 82 L.Ed. 917, "the cases have usually attempted to distinguish between the type of procedural rule involved rather than the kind of sanction being enforced." None of the cases cited by defendants in this aspect of their argument adds to the double jeopardy claim.

heavy expense of investigating, monitoring and prosecuting alleged lawbreakers. The expense is caused because of the alleged conduct of defendants and others like them. It is understandable, and by no means unjust, for Congress to decide that when lawbreakers are caught they should help to defray the enforcement expenses. Cf. Helvering v. Mitchell, *supra*, 303 U.S. at 401, 58 S.Ct. 630, 82 L. Ed. 917. Moreover, the Government suffers in cases like this the injury of having its trade, economic and foreign policies frustrated or impeded. This kind of damage, not the less real for being difficult or impossible to measure precisely, is similar in character to that discussed in *Rex Trailer, supra*, 350 U.S. at 153, 76 S.Ct. 219, 100 L.Ed. 149. It seems clear, in short, that forfeiture of the illegally imported property "or the value thereof" is a reasonable and fair form of liquidated damages, *Rex Trailer, supra*, 350 U.S. at 153–154, 76 S.Ct. at 222, 100 L.Ed. 149, designed to "afford the government complete indemnity for the injuries done it" and "to make sure that the government would be made completely whole." United States ex rel. Marcus v. Hess, *supra*, 317 U.S. at 549, 551–552, 63 S.Ct. at 388, 87 L.Ed. 443. Here, as in prior cases, there is an "inherent difficulty of choosing a proper specific sum which would give full restitution" (*id.* at 552, 63 S.Ct. at 388, 87 L. Ed. 443), but the "remedy does not lose the quality of a civil action because more than the precise amount of so-called actual damage is recovered" (*id.* at 550, 63 S.Ct. at 387, 87 L.Ed. 443). The amount of recovery is not so excessive as to defeat Congress's clear intent that § 1592 be viewed as creating a civil action for present purposes. Rex Trailer Co. v. United States, *supra*, 350 U.S. at 154, 76 S.Ct. 219, 100 L.Ed. 149. As the Court said in *Hess, supra*, 317 U.S. at 551, 63 S.Ct. at 388, 87 L.Ed. 443 [quoting Brady v. Daly, 175 U.S. 148, 157, 20 S.Ct. 62, 44 L.Ed. 109 (1899)]: "It is true that 'Punishment, in a certain and very limited sense, may be the result of the statute before us so far as the wrongdoer is concerned,' but this is not enough to label it as a criminal statute." [7]

## II.

The remaining matters are less interesting and need less discussion.

A. Because of the earlier criminal proceeding, defendants argue that the present suit is barred by reason of res judicata and collateral estoppel. Now that we have characterized the forfeiture suit as "civil" and "remedial" for double jeopardy purposes, it would appear that the latter phrase identifies the relevant doctrine. See 1B Moore's Federal Practice 2701, 2851–57 (2d ed.); cf. Neaderland v. C. I. R., 424 F.2d 639, 641 (2d Cir. 1970).

■ Essentially, defendants argue that in the criminal proceeding the court found there was "no evidence" of false statements, that allegedly false statements form "an essential element of the present action," and that such allegations cannot be relitigated now. Even assuming that the identical facts are involved in both actions,[8] the difference in

7. Mr. Justice Frankfurter, concurring in *Hess, supra* (and see his concurrence in *Rex Trailer*), questioned the rational force of the "dialectical subleties" (317 U.S. p. 554, 63 S.Ct. 379, 87 L.Ed. 443) and labels ("civil," "remedial," "punitive," etc.) that play so prominent a part in deciding issues like the one here. It may be permitted to a trial judge, with the greatest deference, to remark that we are in an area where "labels" may carry resounding consequences of a pervasively emotional as well as legal nature. We hear daily, and do not ignore, the pleas at sentencing that people have been "punished enough" by the brand of criminal conviction. So it means something real and momentous when the lawmakers employ that stigma. The point needs no laboring, however. The considerations of reason and history upon which Mr. Justice Frankfurter rested his vote would seem to dictate a like ruling in this case.

8. The Government argues that the issues in the cases are not identical in that the complaint refers to an array of "false practices" beyond the "specific and limit-

burden of proof by itself precludes application of collateral estoppel. Neaderland v. C. I. R., *supra*, 424 F.2d at 642–643.[9] It is true that in the criminal proceeding all defendants were acquitted of the false statement charges. But as Justice Brandeis said in Helvering v. Mitchell, *supra*, 303 U.S. at 397, 58 S.Ct. at 632, 82 L.Ed. 917:

> "The acquittal was 'merely * * * an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused.' * * * It did not determine that Mitchell had not willfully attempted to evade the tax."

Here, there has been no determination that the defendants did not make the statements, only a determination that their guilt on that charge was not sufficient for criminal conviction.[10] The Government's burden in the civil proceeding is not merely less in quantity; it is also different in kind. In fact, once the Government shows that there is probable cause to institute the forfeiture suit, the burden of proof is on the defendants. 19 U.S.C. § 1615.

B. Finally, the defendants urge that the action is barred by the governing five-year statute of limitations, 19 U.S.C. § 1621. The Government, conceding that the alleged violations happened more than five years before the suit was brought, contends that the wrongs were only discovered within the period. Nothing in defendants' argument is persuasive that the statute means anything other than what it plainly says on this subject: that the suit or action must be "commenced within five years after the time when the alleged offense was discovered * * *." As to when the violations were discovered, or should reasonably have been discovered if that is to be the relevant test, the most that can be said for defendants' position is that there are material issues of fact precluding summary judgment.

The motion for summary judgment is denied. As hereinabove stated (note 3, *supra*), defendants may amend their answers within ten days.

So ordered.

---

ed" charges of false statements in the indictment. Since the court now holds there has been no "adjudication" that the defendants did not make the false statements, there is no need to reach this question. See Helvering v. Mitchell, *supra*, 303 U.S. at 398, 58 S.Ct. 630, 82 L.Ed. 917.

9. Neaderland v. C.I.R., *supra*, 424 F.2d at 643, notes other factors besides burden of proof supporting the conclusion that fact determination in the civil action should not be "wrap[ped] * * * in the straitjacket of a prior decision in the criminal case." The court specifically mentions, as between civil and criminal actions, the difference in modes of proof (e. g., the permissibility of the Government's calling the defendant to the stand), availability to the Government of pre-trial discovery and disclosure, and right to appeal. The Court also suggests that in a civil proceeding the Government could try "to correct an error or initial failure of proof in a criminal trial" without being barred by the prohibition against double jeopardy.

10. Defendants rely upon some colloquy between the Trial Judge and the Assistant United States Attorney at the close of the Government's case, just before the court's acquittal of all defendants on the false statement charges. The transcript reveals that the Government indicated only that it did not oppose a motion to dismiss the false statement counts, and that it had "seen the problem [of proof] there." The phrase in the transcript, "I don't see any proof," is the Trial Judge's alone, not clearly agreed to by the Government, and in any event it must be read in its context to record no more than a lack of proof justifying conviction. The Government should not be penalized here because it bowed with commendable speed and evidently good judgment to a disposition final and unappealable in that separate criminal proceeding.