MIDDLE ATLANTIC DISTRIBUTORS, INC., PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1982–78.      Filed September 20, 1979.

*Michael F. Curtin* and *David Barmak*, for the petitioner.
*Dale C. Allen*, for the respondent.

STERRETT, *Judge:* In a timely mailed notice of deficiency dated November 30, 1977, respondent determined deficiencies in petitioner's income taxes due for the following years and in the following amounts:

| FYE Jan. 31— | Claimed deficiency |
|---|---|
| 1970 | $17,984.04 |
| 1974 | 16,716.38 |
| 1975 | 17,128.66 |

After concessions, the only issue for our decision is whether certain installment payments made by petitioner during its taxable years ended January 31, 1970, 1974, and 1975, pursuant to a stipulation of compromise which settled a civil suit against petitioner by the United States, are nondeductible by virtue of section 162(f), I.R.C. 1954. The parties have agreed that our resolution of this issue will automatically resolve (1) the amount of petitioner's net operating loss carryback deduction to its taxable year ended January 31, 1970, from its 1972 and 1973 taxable years, and (2) the amounts of petitioner's maximum allowable contribution deductions for its taxable years ended January 31, 1974 and 1975. If we should hold that the payments in issue are not deductible as expenses, then we must also decide whether the installment payments made during petitioner's taxable years ended January 31, 1974 and 1975, should be considered undistributed personal holding company income subject to the tax imposed by section 541.

## FINDINGS OF FACT

The facts herein were fully stipulated. Said facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioner Middle Atlantic Distributors, Inc., is a Delaware corporation, the principal office of which was in West Palm Beach, Fla., at the time it filed its petition herein. Timely Federal corporate income tax returns for petitioner's taxable years ended January 31, 1970, 1974, and 1975 were filed with the Internal Revenue Service at Jacksonville, Fla.

From April 1942 through February 16, 1972, petitioner was in the business of distributing wines and liquors. At all times relevant hereto, petitioner had both an importer's basic liquor permit and a wholesaler's basic liquor permit, each of which had been issued by the Alcohol and Tobacco Tax Division pursuant to the Federal Alcohol Administration Act. Beginning in at least May 1954, petitioner operated a United States Customs bonded warehouse, under the supervision of United States Customs officials, in which imported liquors were held prior to distribution.

During the period from approximately August 1, 1957, through approximately May 10, 1962, an official of the Embassy of Turkey withdrew from petitioner's bonded warehouse large

quantities of imported liquor. Under 19 U.S.C. section 196(a)(1930),[1] imported liquor could be acquired for the use of foreign military personnel on duty in the United States free of United States import duties and United States alcohol taxes upon the presentation of withdrawal permits (U.S. Customs Form 7505) reviewed and approved by United States Customs officials. It was later ascertained that the withdrawal permits submitted by this Turkish official were forged. Further, it was later discovered that, instead of distributing the liquor withdrawn from petitioner's warehouse to members of the armed forces of Turkey as required by section 196(a) and as stated in the withdrawal permits, this Turkish official had diverted the liquor to unauthorized persons for sale within the commerce of the United States.

As a result of this unlawful diversion of imported liquor, criminal charges were filed against petitioner and its office manager by the United States. The United States later moved to dismiss its case against petitioner, which motion was granted. The District Court later directed a verdict of not guilty in the action against petitioner's employee. Neither petitioner nor any of its officers or employees were ever convicted or otherwise shown to have had any knowledge of, or complicity in, the Turkish official's plot.

On June 1, 1965, the U.S. Customs Service[2] issued to petitioner, the office manager, and the Turkish official, a "Notice of Penalty or Liquidated Damages Incurred and Demand for Payment." This demand was made pursuant to the provisions of 19 U.S.C. section 1592[3] and sought recovery of $502,109.17, the

---

[1] Act of August 27, 1949, ch. 517, sec. 1, 63 Stat. 666, repealed Act of May 24, 1962, Pub. L. 87–456, tit. III, sec. 303(c), 76 Stat. 78, effective with respect to articles entered, or withdrawn from warehouses for consumption, on or after Aug. 31, 1963. As originally enacted, sec. 196(a) read as follows:

*"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That (a) articles entered, or withdrawn from warehouse, for consumption in the United States, its Territories, or possessions for the official use of persons who are on duty in the United States, its Territories, or possessions as members of the armed forces of any foreign country, or for the personal use of any such person or of any member of his immediate family, shall be admitted free of all duties and internal revenue taxes imposed upon or by reason of importation (including taxes imposed by sections 3350 and 3360 of the Internal Revenue Code) and of all customs charges and exactions * * * "

[2] Prior to Aug. 1, 1973, the U.S. Customs Service was known as the Bureau of Customs. See Treasury Dept. Order 165–23 of Apr. 4, 1973, 38 Fed. Reg. 13037.

[3] Sec. 1592. Penalty against goods

If any * * * importer * * * or other person or persons enters or introduces, or attempts to enter or

full value of the liquor fraudulently withdrawn by the Turkish official from petitioner's warehouse and injected into United States commerce. Petitioner objected to the payment sought by this notice of demand. In due course, the United States filed a civil action against petitioner, pursuant to section 1592, seeking the same $502,109.17, plus costs and interest. The *United States v. Middle Atlantic Distributors, Inc.*, civil action No. 676–67 (D. D.C., March 21, 1967), hereinafter *U.S. v. Middle Atlantic.*

In "Count I" of its complaint against petitioner in *U.S. v. Middle Atlantic,* the Government alleged that petitioner had:

entered and introduced into the commerce of the United States of America, or aided in entering and introducing into the commerce of the United States of America, * * * imported whiskey by means of false, forged, and fraudulent Customs Forms 7505 * * * [and that petitioner] * * * knew or should have known, or in the alternative, was negligent in failing to discover that the aforesaid Customs Forms were false, fraudulent and forged.

In "Count II" of its complaint, the Government alleged that petitioner "aided or procured the making of false statements in Customs Forms 7505 * * * [and that petitioner] knew or should have known that said Forms contained false statements and * * * [petitioner] did not have reasonable cause to believe that said statements were true." Petitioner denied these allegations and all the operative allegations of the complaint.

Subsequent to March 21, 1967, the parties entered into settlement negotiations. These negotiations culminated in a

introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false * * * statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or makes any false statement in any declaration under the provisions of section 485 of this Act * * * without reasonable cause to believe the truth of such statement, or aids or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such * * * statement; or is guilty of any willful act or omission by means whereof the United States is or may be deprived of the lawful duties or any portion thereof accruing upon the merchandise or any portion thereof, embraced or referred to in such * * * statement, or affected by such act or omission, such merchandise, or the value thereof, to be recovered from such person or persons, shall be subject to forfeiture, which forfeiture shall only apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles of merchandise to which such fraud or false paper or statement relates. The arrival within the territorial limits of the United States of any merchandise consigned for sale and remaining the property of the shipper or consignor, and the acceptance of a false or fraudulent invoice thereof by the consignee or the agent of the consignor, or the existence of any other facts constituting an attempted fraud, shall be deemed, for the purposes of this section, to be an attempt to enter such merchandise notwithstanding no actual entry has been made or offered.

letter dated April 28, 1969, to the United States in which petitioner made an offer to settle the Government's claim for $100,000 stating:

> Accordingly, * * * I hereby increase to $100,000 our offer to settle the claim asserted by the Government, as liquidated damages, in order to reimburse the Government for all or a portion of the taxes to which it asserts a claim.
>
> This offer is conditioned upon the Government's dismissal of the captioned action, with prejudice, upon the receipt of defendant's payment.

The United States accepted petitioner's offer "as set forth in * * * [petitioner's] letter of April 28, 1969" by letter to petitioner dated September 16, 1969.

On October 14, 1969, the parties in *U.S. v. Middle Atlantic* executed a document entitled "Stipulation of Compromise" in which the parties settled, without trial, the Government's civil action against petitioner in *U.S. v. Middle Atlantic*. This paper read in relevant part: "Accordingly, the parties hereto have agreed to settle the asserted claim of liquidated damages made by the plaintiff, for the sum of One Hundred Thousand Dollars ($100,000.00)." Under the terms of this Stipulation of Compromise, the $100,000 settlement amount was to be paid in 6 annual installments. These installments were actually made in the following amounts and on the following dates:

| Amount | Date of payment | Petitioner's FYE Jan. 31— |
|---|---|---|
| $20,000 | Oct. 30, 1969 | 1970 |
| 16,000 | Nov. 9, 1970 | 1971 |
| 16,000 | Nov. 22, 1971 | 1972 |
| 16,000 | Sept. 7, 1972 | 1973 |
| 16,000 | Oct. 22, 1973 | 1974 |
| 16,000 | Jan. 10, 1975 | 1975 |

By 1974, petitioner had discontinued the active conduct of its wine and liquor business. Petitioner filed its 1974 and 1975 corporate income tax returns as a personal holding company.

## OPINION

The first issue with which we must deal is the deductibility to petitioner of its payments to the United States under the Stipulation of Compromise. On June 1, 1965, the Customs Service issued a "Notice of Penalty or Liquidated Damages Incurred and Demand for Payment" to petitioner and others for

the payment of $502,109.17 as a "penalty against goods" pursuant to 19 U.S.C. section 1592 (1930).[4] The basis for this demand was that petitioner and others had been determined to be jointly and severally liable for the forfeiture value ($502,109.17) of certain alcoholic beverages which had been entered into petitioner's warehouse under appropriate bonds, and later irregularly withdrawn, duty and tax free, on withdrawal permits which were based on false and/or fraudulent documents.

Petitioner objected to the payment sought by the Customs Service, and subsequently, the United States filed a civil action against petitioner, pursuant to 19 U.S.C. section 1592, seeking recovery of $502,109.17 as a "penalty against goods." This civil action was settled after lengthy negotiations by the execution of a Stipulation of Compromise dated October 14, 1969. In that Stipulation of Compromise, petitioner agreed to settle the asserted claim of the United States by payment of $100,000.

The $100,000 was paid in 6 installments. Petitioner deducted these installment payments on its Federal income tax returns, during each of the taxable years that such payments were made, as ordinary and necessary business expenses under section 162. Respondent disallowed these deductions under section 162(f), alleging that they had been paid in settlement of an actual or potential liability for a fine or penalty.

Respondent does not argue that the payments at issue are not "ordinary and necessary" within the meaning of section 162, but argues simply that they are nondeductible because, although described in section 162(a), they are also described in section 162(f).[5] Petitioner, on the other hand, argues that the payments in issue are deductible "since they represent liquidated damages expressly agreed to by the Government in the Stipulation of Compromise entered by the parties." Thus the question we face on this first issue is a narrow one: are the payments in issue, although admittedly ordinary and necessary business expenses,

---

[4]19 U.S.C. sec. 1592 was amended Oct. 3, 1978, Pub. L. 95–410, tit. I, sec. 110(a), 92 Stat. 893.

[5]SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL. —There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

\* \* \* \* \* \* \*

(f) FINES AND PENALTIES.—No deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law.

nondeductible as "fines or similar penalties" within the meaning of section 162(f)?

The statute itself does not define the phrase "fine or similar penalty." The regulations thereunder, however, provide in relevant part as follows:

Sec. 1.162–21 Fines and penalties.

(a) *In general.* No deduction shall be allowed under section 162(a) for any fine or similar penalty paid to—

(1) The Government of the United States * * * ;

(2) The government of a foreign country; or

(3) A political subdivision of, or corporation or other entity serving as an agency or instrumentality of, any of the above.

(b) *Definition.* (1) For purposes of this section a fine or similar penalty includes an amount—

(i) Paid pursuant to conviction or a plea of guilty or *nolo contendere* for a crime (felony or misdemeanor) in a criminal proceeding;

(ii) Paid as a civil penalty imposed by Federal * * * law * * * ;

(iii) Paid in settlement of the taxpayer's actual or potential liability for a fine or penalty (civil or criminal); or

(iv) Forfeited as collateral posted in connection with a proceeding which could result in imposition of such a fine or penalty.

(2) * * * Compensatory damages * * * paid to a government do not constitute a fine or penalty.

As neither petitioner nor any of its employees were ever convicted of any crime, and as no other plea of guilty or nolo contendere by either petitioner or any of its employees was ever made, section 1.162–21(b)(1)(i), Income Tax Regs., is inapplicable. Similarly, neither the definition contained in section 1.162–21(b)(1)(ii), Income Tax Regs., nor that given in section 1.162–21(b)(1)(iv), Income Tax Regs., applies to the facts before us. No civil judgment and concomitant penalty was ever actually entered against or imposed upon petitioner. Finally, there is no indication in the record that any amount was claimed as forfeiture of collateral—as, for example, forfeiture of petitioner's warehouse bond. Thus, the question before us resolves itself into the determination of whether the payments in issue, which were made in settlement of the taxpayer's potential liability under 19 U.S.C. section 1592, were paid in respect of a "potential liability for a [civil] fine or penalty" within the meaning of section 1.162–21(b)(1)(iii), Income Tax Regs.—or were paid, rather, as "compensatory damages" to the United States.

The legislative history of section 162 has been called ambiguous. *Uhlenbrock v. Commissioner,* 67 T.C. 818, 824 n. 7 (1977);

*Tucker v. Commissioner,* 69 T.C. 675, 678 n. 4 (1978). Certainly, however, by 1972 it was clear that section 162(f) was intended to include civil penalties "which in general terms serve the same purpose as a fine exacted under a criminal statute." S. Rept. 92–437 (1971), 1972–1 C.B. 559, 599–600. A criminal "fine or similar penalty" is one imposed to punish and/or deter. See *Tank Truck Rentals, Inc. v. Commissioner,* 356 U.S. 30, 35–36 (1958) (describing the application of the "public policy" doctrine to the deductibility of fines and penalties. S. Rept. 91–552, *supra,* 1969–3 C.B. at 597). See also *Tucker v. Commissioner, supra* at 680; *McGraw-Edison Co. v. United States,* 156 Ct. Cl. 590, 300 F.2d 453, 455 (1962); *Helvering v. Superior Wines & Liquors,* 134 F.2d 373, 376 (8th Cir. 1943). Thus, it is clear that, if the deduction of a civil fine (or similar penalty) is to fall within the proscription of section 162(f), the fine must be one which punishes and/or deters.

We believe it quite clear that section 1592 is essentially remedial in nature and does not require the imposition of a quasi-criminal fine. In fact, the U.S. Government, itself, in another context in another court, argued to that effect. Thus, it was said in *United States v. Alcatex, Inc.,* 328 F. Supp. 129, 132 (S.D. N.Y. 1971), that "At the same time, the Government is on firm ground when it characterizes the statute here in question as being broadly 'remedial'." There, the Government was seeking forfeiture of some imported silk by reason of the filing of a false declaration statement. The defendant's motion for summary judgment, alleging double jeopardy, was denied. In so concluding, the Court further noted that:

It seems clear, in short, that forfeiture of the illegally imported property "or the value thereof" is a reasonable and fair form of liquidated damages. * * * The amount of recovery is not so excessive as to defeat Congress's clear intent that sec. 1592 be viewed as creating a civil action for present purposes. [*United States v. Alcatex, Inc., supra* at 133.]

Our view of the nature of section 1592 is supported by reference to 19 U.S.C. 1615[6] which provides that the burden of proof is on the defendant once the Government has shown that there is probable cause to institute the suit. The defendant's burden is to carry the day "by a fair preponderance of the

---

[6] 19 U.S.C. sec. 1615 was amended Oct. 3, 1978, Pub. L. 95–410, tit. I, sec. 110(d), 92 Stat. 896.

evidence" (*United States v. One 1937 Hudson T. Coupe, Etc.*, 21 F. Supp. 600, 603 (W.D. Ky. 1937)), i.e., the type of burden present in an ordinary civil lawsuit.

Clearly, section 1592 is designed to protect the security of the commerce of the United States: as noted, violation of a customs law may result in forfeiture of the goods involved, or their value, pursuant to section 1592. No doubt section 1592 may sometimes be used for purposes of punishment or deterrence, but other times it is used for remedial purposes. This is the way in which the Customs Service has perforce used section 1592. See W. Dickey, "Survival From More Primitive Times: Customs Forfeitures in the Modern Commercial Setting Under Sections 592 and 618 of the Tariff Act of 1930," 7 Law & Policy Int'l Bus. 691 (1975).

The remedial, as well as punitive, use of section 1592 is confirmed by the wording of the section 1592 "mitigation" provision, section 1618. Tariff Act of 1930, ch. 497, tit. IV, sec. 618, 46 Stat. 757, 19 U.S.C. sec. 1618. That section provides in relevant part that:

Sec. 1618. Remission or mitigation of penalties

Whenever any person interested in any * * * merchandise, * * * seized under the provisions of this Act or who has incurred, or is alleged to have incurred, any fine or penalty thereunder, files with the Secretary of the Treasury * * * for the remission or mitigation of such fine, penalty, or forfeiture, the Secretary of the Treasury, [or the Secretary of Commerce,] if he *finds that such fine, penalty, or forfeiture was incurred without wilful negligence or without any intention* on the part of the petitioner to defraud the revenue or to violate the law, * * * may remit or mitigate the same upon such terms and conditions as he deems reasonable and just * * * [Emphasis added.]

It is obvious from this language that a section 1592 claim can be made in respect of both punitive and remedial purposes.[7] That the Customs Service itself has recognized the section 1592 remedial aspects is indicated by its policy of reducing the section 1592 "penalty" claim, which is perforce originally for the goods or their full value, to an amount equal to 1 times the revenue loss, i.e., the amount of actual damages incurred by the United States in lost revenue where there is no culpable intent. See, e.g., 19 C.F.R. sec. 171.1(a)(1)(iv)(1975).

Turning again to section 162(f), the character of the payment

---

[7]We note here again that neither petitioner nor its employee was convicted of any criminal acts.

involved depends on the origin of the liability giving rise to it. *Uhlenbrock v. Commissioner, supra* at 823; *United States v. Gilmore,* 372 U.S. 39, 48–49 (1963). Our decision, then, must be based upon an inquiry into the question of whether, in this case, the section 1592 claim was made in respect of section 1592 compensatory purposes or was made, on the other hand, for the purpose of punishing culpable behavior. We do not believe that the settlement in this case had the effect of the imposition of a "penalty" by the Government.

It is clear throughout the settlement negotiations between petitioner and the United States, as well as in the settlement document itself, that petitioner was offering to make only a settlement payment representing liquidated damages. It is equally clear that, when the United States accepted petitioner's offer in settlement, it accepted the settlement as "liquidated damages." We conclude, therefore, that at all relevant times during the settlement negotiations, the United States was attempting to recover, and subsequently recovered, only reimbursement for lost revenue and other damages. Obviously, such an intent by the Government does not also comport with an intent to punish or deter. We conclude that the amounts at issue herein were not paid as a "fine or similar penalty."

The pre–1969 case of *Grossman & Sons, Inc. v. Commissioner,* 48 T.C. 15 (1967), reviewed by the Court, is in many respects similar to the one now before us. That case involved certain payments made by the taxpayer in settlement of a suit brought against it by the United States under the False Claims Act. 31 U.S.C. secs. 231 through 233 (1976). Certain of the taxpayer's officers and stockholders had been convicted of criminally conspiring to supply inferior goods to the United States under a contract the taxpayer had with the Navy Department. A civil action was later filed against petitioner claiming both compensatory and punitive damages. This action was settled and the payment in settlement deducted. In that case we were, therefore, confronted with a situation like the one before us, involving attempted deduction of amounts paid in settlement of a claim made under a statute having both penal and compensatory aspects. *Grossman & Sons, Inc. v. Commissioner, supra* at 31. From all the evidence, we concluded that the settlement was made in respect of the Government's compensatory claim and allowed the deduction:

But while the Government chose to proceed under the False Claims Act, this does not necessarily mean that the amount petitioners agree to pay, although resulting in a dismissal of this suit with prejudice, was payment of a penalty or forfeiture. * * * Petitioners claim that the amount they agreed to pay represented only the damages suffered by the Government and did not include any forfeitures or double damages. This finds support * * * in the settlement offer submitted by petitioners and accepted by the Government * * *

* * * Had the United States intended that the payment be penal in nature it could have insisted on so indicating in the settlement agreement. Instead, a duly authorized representative of the Government wrote to counsel for petitioners stating that "the Attorney General has accepted the offer in settlement you have proposed on behalf of your clients, as contained in your letters of July 1, 1958 and July 2, 1958, modified by your letter of December 2, 1958." On the record before us we must conclude that the characterization of the payment as damages for breach of contract contained in petitioner's settlement offer, which was accepted by the Attorney General, must be given effect. [*Grossman & Sons, Inc. v. Commissioner, supra* at 28–29.]

Once again, we conclude that the characterization of the payment as damages by the parties must be given effect.

In conclusion, the parties have called our attention to the recently decided case of *Adolf Meller Co. v. United States*, 220 Ct. Cl. ___ , 600 F.2d 1360 (1979). That case also involved the deductibility under section 162 of a section 1592 penalty against goods. Meller had imported synthetic gemstones in such a way as to bypass normal customs procedures. The District Director of Customs sent Meller a Notice of Penalty under section 1592 demanding payment of $533,370.12. In addition to the forfeiture amount, the Customs Service demanded $55,560.34 in lost customs duties on the allegedly mislabeled gems. After negotiations, Meller agreed to pay the demanded duties, "plus an additional sum of $43,000 in compromise of the original assessed penalty of $533,370.12." *Adolf Meller Co. v. United States, supra* at 1361.

Before the Court of Claims, Meller "conceded that the $43,000 payment at issue here falls squarely within subsection (1)(b)(iii) [sic] [sec. 1.162–21(b)(1)(iii)] * * * and that the deduction is therefore barred if the regulation is valid." Clearly Meller had conceded the very point at issue in the case before us. On the other hand, our petitioner has not challenged the validity of the regulation under section 1.162–21, Income Tax Regs. We do not disagree with the decision.

As we hold for petitioner on this first issue, we need not reach respondent's personal holding company claim.

*Decision will be entered for the petitioner.*